THE STATE ex rel. GREAT AMERICAN HOME SAVINGS INSTITUTION et al. v. JOHN A. LEE, Supervisor of Building & Loan Associations.

In Banc, July 8, 1921.

1. **HOME-BUILDING ASSOCIATION: Right to Certificate: Grounds of Denial.** An unincorporated association organized in compliance with and according to the terms of Section 10263, Revised Statutes 1919, declaring that "the provisions of Article X, Chapter 90, Revised Statutes 1919, shall not be applicable to any unincorporated association of individuals formed for the purpose of accumulating a fund or funds to be used for the purpose of enabling the contributors of such fund, or their assigns, to secure a loan or loans for the purpose of acquiring a dwelling house or farm or other income-producing property or discharging a mortgage or other encumbrance thereon; *Provided,* however, that no such association shall commence business in this State until it shall first submit to the Supervisor of Building and Loan Associations a detailed statement of its plan for doing business and a copy of the contracts proposed to be issued, and procure from him a certificate authorizing it to do business," is entitled to a certificate authorizing it to do business in this State, and said certificate cannot be denied on the ground that such association is a limited partnership, or on the ground that it is subject to the chapter on corporations and cannot do business without being incorporated, or on the ground that not being incorporated it has no legal entity or artificial personality and cannot take title to or act as trustee of a loan and trust fund. Nor can a certificate be denied on the ground that no steps have been taken to accumulate a fund, for no such steps can be taken until authority to do business has been obtained. Nor can it be denied on the ground that the trust cer-

680    SUPREME COURT OF MISSOURI,

State ex rel. Home Savings Ins. v. Lee.

tificates are assignable and trustees become and cease to be trustees by the mere purchase and sale of trust certificates, without any right in the creators and beneficiaries to object, for the right to sell is incident to ownership. Said Section 10263 is a valid statute.

2. **PLEADING**: Conclusion. A mere plea in the answer that plaintiff has failed to comply with any of the provisions of the statutes relating to partnerships is simply the averment of a legal conclusion and raises no issue of fact, and is to be treated as no allegation at all.

3. **HOME-BUILDING ASSOCIATION**: Right to Certificate: Pleading: Partnership. A farm-home-building association, organized in pursuance to the statute (Sec. 10263, R. S. 1919), cannot at the same time be a partnership, a corporation, a bond-investment company, a joint-stock company and a lottery. Pleas that such an association is a partnership, a joint-stock company or a bond-investment company are inconsistent and self-destructive.

4. ———: Contract Inter Sese. It is competent for the members of a farm-home-building association organized under the statute, to contract as to their liability to each other and among themselves.

5. ———: Corporation. The contention that a farm-home-building association must be incorporated before it can do business, and that the power to sue and be sued, to sell, acquire and convey property, to do business as a legal entity, is a sovereign grant of power possessed only by corporations and that such association is therefore subject to the statute relating to corporations, is answered in the negative by the statute authorizing it to organize and do business upon compliance with the conditions it prescribes.

6. ———: ———: Constitutional Provision. Nor is such farm-home-building association made a corporation by the provision of the Constitution declaring that "the term 'corporation,' as used in this article, shall be construed to include all joint-stock companies or associations having powers or privileges not possessed by individuals or partnerships." Such provision does not convert joint-stock companies or voluntary associations into corporations, or require them to incorporate as a condition entitling them to do business.

7. ———: Bond-Investment Company. A home-building association, organized in pursuance to the statute (Sec. 10263, R. S. 1919), is not a bond-investment company, for the reason that it is not a corporation, and does not seek to do a bond-investment business within the meaning of the statutes regulating such companies.

State ex rel. Home Savings Ins. v. Lee.

8. ————: Reasonableness of Contract. Courts have no power to pass upon the reasonableness of the terms of a contract adopted by the parties. Whether the plan of a farm-home-building association is financially sound, and whether its trustees and the beneficiaries under its contracts will equitably share in the profits, being matters of contract, are not questions for a court to determine.

9. ————: Name: Similarity to Existing Corporation. There is no such similarity between the name "Great American Home Savings Institution" and the name of an existing corporation known as "American Home Building and Loan Association," domiciled in the same city, as is calculated to mislead the public, and consequently the Supervisor of Building and Loan Associations was not justified, on account of similarity of names, in refusing the first named association a certificate to do business in this State.

10. ————: Inspection and Supervision: Constitutionality of Statute: Raised by Stranger. The statute (Sec. 10263, R. S. 1919) provides that an association organized under it shall "be subject to the supervision and examination" of the Supervisor of Building and Loan Associations, "similar, in so far as applicable, to his supervision and examination of building and loan associations," and thereby it adopts and incorporates into itself the statute fixing a fee of twenty-five cents for each $1000 of assets shown by the report of a building and loan association, and by necessary implication entitles the supervisor to the fees appertaining to such supervision and examination. But aside from that, a mere friend of the court, who is not a party to the suit, cannot be heard to call in question the constitutionality of the statute, and to contend that it allows an association organized under it to be licensed, supervised and examined without cost to such association and to impose the expense thereof upon building and loan associations, and that the statute thereby denies the equal protection of the law guaranteed by the Fourteenth Amendment. Laws enacted by the Legislature are presumed to be constitutional, and their validity can be questioned only by persons whose rights are impaired by it and who are parties to the action.

11. ————: Well-Being of State: Constitutionality of Statute. Section 10263, Revised Statutes 1919, authorizing unincorporated associations to do business in this State, does not violate Section 5 of Article 12 of the Constitution forbidding corporations to conduct their business in such a manner as to infringe the general well-being of the State, since such statute has no reference to corporations. But aside from that, said statute does not permit associations organized under it to conduct their business in such a manner as to infringe the general well-being of the State.

12. ———: **Lotteries.** Section 10263, Revised Statutes 1919, does not permit lotteries to do business in this State, and a simple reading of it excludes the idea that the unincorporated associations which may be organized under it are lotteries.

13. ———: **Title of Act: Class Legislation.** The title of the Act of 1919 (Sec. 10263, R. S. 1919) is not defective, nor is the act class legislation.

14. ———: **Public Policy.** Courts cannot declare statutes void on the ground that they are against public policy and morals and liable to lead to corruption and oppression.

## Mandamus.

PEREMPTORY WRIT ISSUED.

*Wilfley, Williams, McIntyre, Hensley & Nelson* for relators.

(1)   The business of relator does not conflict with the laws and Constitution of this State, but, on the other hand is, in each and every particular, in full accord therewith.  (a)   The agreement and declaration of trust for the formation of the Great American Home Savings Institution is a lawful contract, providing for the formation of a "voluntary association of unincorporated individuals" to do business in Missouri, under Section 10263, R. S. 1919. State ex rel. v. Swanger, 190 Mo. 561; 4 Cyc. 304; Hammerstein v. Parsons, 38 Mo. App. 332; Missouri Bottlers' Assn. v. Fennerty, 81 Mo. App. 525; King v. Webb, 14 East. 406; Kuhlman v. Meyer, 50 Mo. App. 648; Muscogee Land Co. v. Hyer, 18 Fla. 419; Coleman v. Knights of Honor, 18 Mo. App. 195; Byrne v. Jones, 159 Fed. 321; Michod v. Gerod, 45 U. S. 503; Sec. 10234, R. S. 1919; Heard v. March, 12 Cush. 580; Townsend v. Goeway, 19 Wendall (R. I.) 427; Husey v. Arnold, 185 Mass. 202; Cross v. Jackson, 5 Hill, 478; Pittsburg Wagon Works Est., 204 Pa. St. 432; Hart v. Seymour, 147 Ill. 598; Kerrison v. Stewart, 93 U. S. 155; Silk Works v. Solomon, 4 Hun, 135.   (b)   It

is true that relators have not complied with any of said statutes relating to limited partnerships, and this for the very simple reason that said association is in no sense a limited partnership. It would be very impractical if not impossible to carry on the business known as the building and loan association business under a limited partnership. Relators in the present instance are certainly not attempting so to do. Furthermore the limited partnership statutes do not prohibit the carrying on of any business but are merely permissive in that they grant certain privileges to those who undertake to operate thereunder and in compliance with said statutes. (c) Said association does not seek to exercise the powers of a corporation, is not a corporation, and it is therefore not required to comply with the laws concerning the organization of private corporations. Uncorporated associations may have and possess many of the incidental attributes of corporations. But incidental attributes, such as having a common name, stockholders, stock certificates, by-laws, directors, limited liability of stockholders or trustees, do not render such associations corporations, such privileges are not privileges belonging exclusively to corporations but are merely such privileges as have for many generations been held and possessed by individuals under and by virtue of their common law right of contract. Spottswood v. Morris, 12 Idaho, 360; Hotel Company v. Jones, 177 U. S. 449; Warner & Ray v. Beers, 23 Wend. 101; King v. Webb, 14 East. 406; 4 Cyc. 304; Hammerstein v. Parsons, 38 Mo. App. 332; Missouri Bottlers Assn. v. Fennerty, 81 Mo. App. 525; State ex rel. v. Stead, 64 Mo. App. 28; Sec. 1186, R. S. 1919 (seventh clause). (d) The name "Great American Home Savings Institution" is not an imitation of the name "American Home Building and Loan Association." State ex rel. v. McGrath, 92 Mo. 358. (e) The business proposed to be carried on by the relators (as fully explained in the statement of facts) falls clearly within the provis-

684     SUPREME COURT OF MISSOURI,

State ex rel. Home Savings Ins. v. Lee.

ions of said Section 10263. Relators having fully complied with the provision of said section, said section expressly exempts the relator association from complying with the remaining sections of said article. (3) Respondent's duties under Sec. 10263, R. S. 1919, being purely ministerial, he is without right or authority to raise said constitutional questions. State ex rel. Wiles v. Williams, 232 Mo. State ex rel. Railroad Co. v. Johnston, 234 Mo. 351; Smith v. State of Indiana, 191 U. S. 138; Braxton County Court v. West Virginia, 208 U. S. 192. (4) If the court should hold that respondent can raise the question then we most earnestly insist that Section 10263, does not in any manner violate any of the constitutional provisions now attempted to be raised by respondent. (5) Mandamus is the proper remedy. State ex rel. v. Cook, 174 Mo. 118; State ex rel. v. Johnston, 234 Mo. 356.

*Jesse W. Barrett,* Attorney-General, and *Merrill E. Otis,* Assistant Attorney-General, for respondent.

The questions raised by the pleadings are purely legal. The discussion of these questions in the brief filed in this case with leave of court by the *amicus curiae* is, from respondent's standpoint, so exhaustive and complete that respondent desires to submit the case upon that brief, hereby adopting it as a presentation of the points and arguments by reason of which he has refused to issue to relators a certificate to do business.

*Alroy S. Philips* and *Lee B. Ewing, Amicus Curiae.*

(1) The relator association is not a common-law trust. (a) Its directors take no title to its assets and the title is vested in the holders of the trustee certificates, who constitute its members. Douthitt v. Stinson, 63 Mo. 278; Coal Co. v. Bingham, 97 Mo. 196. (b) Its members are owners and masters of the capital fund,

who are associated together by the terms of the agreement and are principals whose managing committee, or "directors," are "at all times subject to the control" of the members, and are agents and not trustees. Williams v. Milton, 215 Mass. 8; Simson v. Klipstein, 262 Fed. 825. (2) The relator association must comply with the chapter on limited partnerships. (a) It is a partnership and its members are liable as partners. Williams v. Milton, 215 Mass. 1; Simson v. Klipstein, 262 Fed. 823; Laney v. Fickel, 83 Mo. App. 63. (b) It cannot limit the liability of its members without complying with the chapter on limited partnerships. Sec. 9240, R. S. 1919; Selden v. Hall, 21 Mo. App. 462. (3) The relator asociation is an unincorporated corporation which is subject to the chapter on corporations and cannot do business without being incorporated. Sec. 11, Art. 12, Mo. Constitution; Sec. 9722, R. S. 1919. (a) The power to be sued in its partnership name is not a power or privilege possessed by a partnership. Weldon v. Fisher, 194 Mo. App. 579. (b) The right to be sued in their own names, given by our statutes to unincorporated associations, is a sovereign grant of a power not possessed by partnerships. Sec. 1186, R. S. 1919; Spottswood v. Morris, 12 Idaho, 375, 382. (c) See 9722, R. S. 1919, is itself a sovereign grant to voluntary associations of all of the powers of corporations save entity and the powers incident to entity. Secs. 9722, 9749, R. S. 1919; Williams v. Express Co., 195 Mo. App. 362; Weihtuechter v. Miller, 276 Mo. 329. (d) The Missouri doctrine is that the mere assumption of corporate powers, without a sovereign grant, brings an unincorporated association within the definition of a corporation. Williams v. Express Co., 195 Mo. App. 362; Weihtuechter v. Miller, 276 Mo. 322, 329. (e) Lack of entity brings relator association into such conflict with the requirements of the law that it must incorporate under it. Secs. 9734, 9735, 9742, 9749, 10,144, 10,159, R. S. 1919; Sec. 7, Art. 12, Mo. Constitution; Sec. 8,

686       SUPREME COURT OF MISSOURI,

State ex rel. Home Savings Ins. v. Lee.

Art. 12, Mo. Constitution, Home Lumber Co. v. Hopkins, 190 Pac. 601; 11 C. J. 381. (4) Not being incorporated, the relator association has no legal entity or artificial personality, and cannot take title to or act as trustee of the loan and trust fund. Great Northern Hotel Co. v. Jones, 177 U. S. 449; Guild v. Allen, 28 R. I. 434; German Land Assn. v. Scholler, 10 Minn. 338; 5 C. J. 1343; Douthitt v. Stinson, 63 Mo. 268, 73 Mo. 199; Coal Co. v. Bingham, 97 Mo. 196; Reinhard v. Mining Co., 107 Mo. 624; Miller v. Risenberger, 144 Mo. 299; Benevolent Society v. Murray, 145 Mo. 628; Lumber Co. v. Oliver, 65 Mo. App. 435; Riffel v. Ozark L. & L. Co., 81 Mo. App. 177; Talbert v. Grist, 198 Mo. App. 495. (5) Relator association's plan of compensation for itself is contrary to equitable principles. (a) It is contrary to equitable principles for a trustee to solicit being made trustee and charge the settlor or beneficiaries with the expense of creating the trust. Trustees are only allowed compensation for expenses in administering the trust. 39 Cyc. 484. (b) It is also contrary to equitable principles for relator association to share in the profits of the loan and trust fund in which it has no interest, and an agreement to that effect will not be permitted to stand. 39 Cyc. 296; Kilpatrick v. Robert, 278 Mo. 265; In re Mays, 197 Mo. App. 565; 39 Cyc. 300, 301; Cornet v. Cornet, 269 Mo. 298. (6) Relator association is a bond investment company. (a) It is a corporation within the meaning of Sec. 10333, R. S. 1919, because that section is in the chapter on corporations, and the definition in Section 9722, applies to the whole chapter. Authorities cited under Point 3. (b) The business done by relator association is that done by bond investment companies. Sec. 10333, R. S. 1919; Pratt v. Livingston Mercantile Co., 111 Mo. App. 102; 9 C. J. 7, 8; 25 Cyc. 1636; Siever v. Inv. Co., 183 Mo. 41-45; United States v. McDonald, 59 Fed. 563; Glover v. St. Louis Mutual Bond Inv. Co., 138 Mo. 410. (7) The relator association is a co-operative association

not excepted from the operation of the Co-Operative Act. (a) Relator association is not a building and loan association, because it is organized for profit and lacks the element of mutuality and the other features of a building and loan association. 9 C. J. 919, 921, 23; Section 10201 and the other sections of Article 9, Chapter 90, Revised Statutes 1919. (b) Section 10246, excepts only building and loan associations like those referred to and incorporated under Article IX of Chapter 90, R. S. 1919. Sec. 10246, R. S. 1919; Jarrett v. Cope, 68 Pa. 71. (c) The catchwords to Section 10263 do not make a building and loan association out of relator association or any association therein referred to. Annotation to Sec. 7090, R. S. 1919. (d) Relator association is not one of the kind of associations referred to and excepted by Sec. 10263, R. S. 1919, because the persons who accumulate the loan and trust fund and contribute thereto are not members of relator association and there is no association of such contributors. (8) Respondent has the right to question the constitutionality of Section 10263. (a) This section requires respondent to determine whether a proposed plan "is in conflict with the laws and Constitution of this State," which is the determination of questions of mixed law and fact. Such duties are judicial and not ministerial in their nature. 26 Cyc. 161; State ex rel. v. Thornhill, 174 Mo. App. 473; United States v. Commissioner, 72 U. S. (5 Wall.) 565; People v. Salsbury, 134 Mich. 551. (b) If respondent has abused such powers he is subject to mandamus. 26 Cyc. 161-162. (c) Respondent questions his jurisdiction to issue a license under the statute, and mandamus always lies to determine whether jurisdiction exists, and if so, to compel its exercise. State ex rel. Bayha v. Phillips, 97 Mo. 331; State ex rel. v. Homer, 249 Mo. 66, 75; State ex rel. v. Holtcamp, 266 Mo. 372. (d) Even if respondent's duties are ministerial in their nature, the mere fact that the Attorney-General has advised him to continue refusing to issue

a license to relator on the ground of the unconstitution ality of the statute is sufficient to entitle relator to raise the question. State ex rel. v. Kimmel, 256 Mo. 643; State ex rel. v. Williams, 232 Mo. 71. (g) This court has often passed on the constitutionality of statutes where it involved the power of a ministerial officer to proceed at all, and the propriety of the action of this court in issuing a writ to compel an officer to proceed under an unconstitutional statute. State ex rel. v. Gordon, 268 Mo. 713; State ex rel. v. Johnson, 234 Mo. 354. (9) Section 10263 denies the equal protection of the laws in violation of Section 1 of Article XIV of the amendments to the Constitution of the United States. This section allows the associations therein referred to to be licensed, supervised and examined without cost to such associations, and throws the entire burden of the expense thereof upon the shoulders of building and loan associations. Secs. 10229, 10230, 10231, R. S. 1919; Laws 1915, p. 8, sec. 13; Laws 1917, p. 50, sec. 4, and page 70, sec. 26; Laws 1919, p. 42, sec. 4; Ford v. Standard Oil Co., 32 App. Div. 596, 53 N. Y. Supp. 51; Merchants' Exchange v. Knott, 212 Mo. 635; State v. Bixman, 162 Mo. 39, 71; Armour & Co. v. City Council, 134 Ga. 178, 27 L. R. A. (N. S.) 676; State v. Gabarowski, 111 Iowa, 496 56 L. R. A. 570; State v. Shedroi, 75 Vt. 297; City of Laurens v. Anderson, 75 S. C. 62, 117 Am. St. 890; Commonwealth v. Hana, 195 Mass. 266, 11 L. R. A. (N. S.) 803, 122 Am. St. 257; State v. Whitecom, 122 Wis. 122. (10) Section 10263 is in violation of clause 26 of Section 53 of Article IV of the Missouri Constitution. (a) To grant inspection free to one at the expense of another is the grant of a special privilege. (b) It is also the grant of an immunity. (11) Section 10263, permits lotteries in violation of Section 10 of Article XV of the Missouri Constitution. It authorizes the methods forbidden in Section 10237, and the practical operation of all such schemes results in their being held to be lotteries. Making loans in the order of writ-

Vol. 288]          APRIL TERM, 1921.          689

State ex rel. Home Savings Ins. v. Lee.

ten applications therefor works out as a lottery. United States v. Purvis, 195 Fed. 620; Siver v. Guarantee Inv. Co., 183 Mo. 50; United States v. McDonald, 59 Fed. 563. (12) Section 10263, violates Section 5 of Article XII of the Missouri Constitution, in that it permits corporations to conduct their business in such a manner as to infringe the general well-being of the State. State ex rel. v. Mercantile Co., 184 Mo. 176, 186.

HIGBEE, J.—The statement of the case by relators, not questioned by the respondent except as to their conclusions, is substantially as follows:

This is a proceeding in mandamus against the Supervisor of Building and Loan Associations in the State of Missouri, brought by the Great American Home Savings Institution, an unincorporated association of individuals, who are also parties relators, seeking a certificate of authority to do business in this State, under a plan set forth in a trust agreement for the formation of the Great American Home Savings Institution heretofore filed with the Supervisor of Building and Loan Associations when an application was made October 27, 1920, for a certificate to do business in this State under the provisions of Section 10263, Revised Statutes 1919. The form of the trust agreement for the organization of the Great American Home Savings Institution is what is familiarly known as a common-law trust.

Attached to said trust agreement were a detailed statement of its plan for doing business, a copy of the contracts proposed to be issued and other documents.

The Supervisor of Building and Loan Associations refused to issue a certificate authorizing this association to do business in this State, and suit was instituted in this court praying for a writ of mandamus commanding the Supervisor of Building and Loan Associations to issue to petitioners herein a certificate authorizing them to do business in this State under the plan set forth in said trust agreement. The alternative writ of

288 Mo.—44

mandamus was granted by this court, whereupon respondent waived the issuance and service of said alternative writ, and afterwards filed his second amended return.

The Great American Home Savings Institution is a voluntary unincorporated association of individuals formed for the purpose of accumulating a fund or funds to be used under the terms of the trust agreement for the purpose of enabling the contributors to such fund or their assigns, to secure a loan or loans for the purpose of acquiring a dwelling house or farm or other income-producing property, or discharging a mortgage or other encumbrance thereon. The business intended to be carried on under said trust agreement to all practical intents and purposes is the same as the business now being conducted by corporations doing a building and loan association business in this State.

Said trust agreement provides for the issuance of trustees' certificates in the amount not exceeding $100,-000 to provide an initial fund which is in the nature of a permanent guaranty fund and furnishes funds to meet immediate loan demands and is to stand as a guaranty to the maintenance of the loan and trust fund. The trust agreement further provides for the issuance of trust certificates on the monthly installment plan in denominations of $1,000 and multiples of $100 in excess thereof. The holders of said trust certificates are to pay thereon in monthly payments the sum of $6.50 per $1000 face value for a period of 132 months. The loan and trust fund is created from these monthly payments by setting aside $6.20 per month out of each monthly payment, after the first three payments, and said fund is to be maintained upon a four per cent basis, compounded monthly, which is the liability of the Great American Home Savings Institution on account of said fund. The Great American Home Savings Institution agrees to establish and maintain said loan and trust fund at all times unimpaired. The first three monthly pay-

ments of $6.50 and 30 cents of each subsequent payment of $6.50 per each $1000 face value of certificates shall belong to the general funds of the trust and will be available for overhead and operating expenses.

The trust agreement further authorizes the issue of a "full paid interest bearing certificate" subject to the approval of the Supervisor of Building and Loan Associations. Hence, the Great American Home Savings Institution has three sources available for raising funds to make loans to home builders: first, by the issuance of $100,000 of trustee certificates, which cannot be issued for less than their par value: second, the issuance of the installment trust certificates; and, third, the issuance of full-paid interest-bearing certificates.

The owner of the trust certificate shall be entitled to a loan equal to its face value to be made from the "Loan and Trust Fund" (or from funds created by the issuance of trustees' certificates), in the order of written applications made therefor, and subject to the rights and priorities of other certificate owners, the security tendered for said loan being satisfactory. The said loan shall be made only for the purpose of the purchase or building of a home, purchase of farm or other improved income property, or making improvements thereon or paying off mortgage, deed of trust, or other encumbrances existing thereon. In the event a certificate owner does not avail himself of the borrowing privilege, then at the end of eleven years he collects his investment plus his share of the surplus profits earned in the "Loan or Trust Fund," not to exceed $308 per $1000 face value of the certificate, which means the maximum amount to be repaid on the $1000 trust certificate held by one who has not exercised the loan privilege and has deposited 132 monthly payments of $6.50 (or a total of $858) is $1308. However, $1000 is the guaranteed liability of the institution.

Loans made from the Loan and Trust Fund under the terms of the trust certificate are to be repaid by

the borrower in 132 monthly installments of $11.19 per $1000 which cover both principal and interest on the loan. In other words, anyone who borrows $1000 from the Loan and Trust Fund repays the Great American Home Savings Institution in 132 monthly payments of $11.19 each, or an aggregate of $1,477.08, which is a return of the principal with interest at the rate of 7.72 per cent per annum. By reference to the actuarial opinions of Messrs. Harvey and Shepher, the sum of $6.20 per month set aside to the Loan and Trust Fund from the $6.50 monthly payment by the holder of trust certificate for 132 months, less the first three payments, improved with interest at the rate of 7.72 per cent earned on loans, will equal $1,248.37 at the end of the time. That is, the individual share of each certificate owner in this fund and its earnings at 7.72 per cent interest will amount to $1,248.37 per $1000 face value of certificate, and since the liability assumed on the certificate is limited to $1000, this actuarial opinion shows a surplus profit earned on the money set aside to the Loan and Trust Fund for the "exclusive benefit and profit of certificate owners" of $248.37 on each individual certificate of $1000. But under the terms of the certificate "all surplus earnings from interest, fines, transfer and waiver fees, cash surrender and partial paid-up values" belong to the non-borrowing owners of trust certificates, to the "extent of, but not to exceed a total surplus of $308 per $1000 face value." So that the Great American Home Savings Institution does not profit by the earnings from these sources on account of the $6.20 placed in the Loan and Trust Fund unless said earnings exceed $308 per $1000.

The loan privilege provides that "when loan is made for any of the purposes defined herein, this certificate may be surrendered, in which event the owner shall be credited with its accrued value—equal to $6.20 of each monthly deposit made on each $1000 face value of this certificate less the first three; with interest at the rate

of 6 per cent per annum, which may be applied as part equity requirements for said loan or withdrawn in cash at the option of the owner.''

Trust certificates become non-forfeitable after four monthly deposits have been made. That is, the holder may surrender his certificate and receive in lieu thereof a paid-up certificate for the total amount paid in, less the first three payments, which paid up certificate matures eleven years from date with interest at five per cent per annum.

The trust certificate gives its owner a cash surrender privilege at the end of three years or at the end of any year thereafter equal to $6.20 of each monthly deposit made, less the first three payments with interest at the rate of five per cent per annum thereon—plus its share of surplus earned, not to exceed two per cent more, or certificate owner may borrow eighty per cent of the accrued cash value after one year at eight per cent discount by giving certificates as collateral security.

The affairs of the Great Amerian Home Savings Institution are under the general direction of a board of directors selected by the holders of trustees' certificates. The board of directors shall cause a full and accurate set of books of account to be kept, in which shall be kept a full record of all of the transactions of the institution, and a full report of the financial condition shall be made by the president of the trust at all annual meetings of the trustees. The board of directors shall be charged with the duty of taking proper action by all proper methods in order to afford a proper and equitable administration of the affairs and business of the trust.

Under the plan of organization and operation and under the law under which relators seek to do business, the trustees or managers of the Great American Home Savings Institution shall from time to time furnish such surety bonds to secure the faithful performance of their trusts as may be required by the Supervisor of Build-

ing and Loan Associations of Missouri, and the Great American Home Savings Institution shall be subject to the supervision and examination of the Supervisor of Building and Loan Associations of Missouri, similar, in so far as applicable, to his supervision and examination of building and loan associations.

It is admitted in the pleadings that prior to the time respondent declined to issue to relators certificates of authority to do business in this State, or at any time prior to the institution of this suit, respondent had not been advised by the Attorney-General of Missouri that Section 10263, Revised Statutes 1919, was unconstitutional.

It is further admitted in the pleadings that at and prior to the time relators made application to respondent for a certificate of authority to do business in this State, relators applied to and were advised by the then Secretary of State of Missouri that the name "Great American Home Savings Institution" was available for their use, and that the same did not conflict with any corporate name then in use in this State.

As suggested above, all issues of fact have been eliminated by the pleadings and the only issues involved are purely legal ones. Respondent contends that said plan of doing business conflicts with certain of the laws of the State of Missouri, and also contends that Section 10263, Revised Statutes 1919 (which is the section under which relators seek to organize), violates certain provisions of both the State and Federal constitutions.

I.   The relator's statement sets forth the organization, the plan for doing business, the contracts proposed to be issued and the business of the association,

Right to
Certificate.

so that it is unnecessary to recite the articles of association. The respondent does not question the accuracy of the statement. We are only concerned with the legal questions arising on the pleadings.

Vol. 288]          APRIL TERM, 1921.          695

State ex rel. Home Savings Ins. v. Lee.

The Missouri State League of Building and Loan Associations, claiming to have a real interest in this case, has intervened and filed a brief as *amicus curiae* (adopted by the Attorney-General), contending that the relator association is not a common-law trust; that it is a limited partnership; that it is subject to the chapter on corporations and cannot do business without being incorporated; that not being incorporated, it has no legal entity or artificial personalty and cannot take title to or act as trustee of the loan and trust fund; that it is a bond investment company; that it is a co-operative association not excepted from the operation of the Co-operative Act, and is not a building and loan association, and that it has not complied with the several applicable statutes.. Other contentions will be noted in the opinion.

It is admitted that the relator association has not complied with the statutes relative to limited partnerships, and other statutes referred to, but it claims it has complied with and is entitled to a license to do business as an unincorporated association under Section 10263, Revised Statutes 1919.

This statute was enacted in the year 1919 (Laws 1919, p. 225). Omitting the emergency clause, the act is as follows:

*"Building and Loan Associations.*—That the provisions of Article X, Chapter 90, Revised Statutes of Missouri 1919, shall not be applicable to any unincorporated association of individuals formed for the purpose of accumulating a fund or funds to be used for the purpose of enabling the contributors to such fund, or their assigns, to secure a loan or loans for the purpose of acquiring a dwelling house or farm or other income-producing property or discharging a mortgage or other encumbrance thereon: Provided, however, that no such association shall commence business in this State until it shall first submit to the Supervisor of Building and Loan Associations a detailed statement of its plan for

doing business and copy of the contracts proposed to be issued, and procure from him a certificate authorizing it to do business, and it shall be the duty of the Supervisor of Building and Loan Associations to examine into such association, and if he finds that the business of such association is not in conflict with the laws and Constitution of this State, he shall issue his certificate authorizing such association to do business; and provided further, that the trustees or managers of such association shall, from time to time, furnish such surety bonds to secure the faithful performance of their trust as such Supervisor of Building and Loan Associations shall reasonably require, and be subject to his supervision and examination, similar in so far as applicable, to his supervision and examination of building and loan associations; and provided also, that one copy of all contracts or trust certificates issued shall be deposited with the Bureau of Building and Loan Supervision of this State.''

The contentions in the respondent's second amended return are that the organization, plan of doing business, the contracts proposed to be issued, and the business of said association are in conflict with the laws and constitutions of Missouri and of the United States, in the following particulars, some of which we will take up in their order; the articles of association are a mere naked agreement and do not establish a trust; the alleged declarants do not own any trustee certificates and have not invested any money in said enterprise. The specifications under this head cover two pages of printed matter relative to the contention that the plan is contrary to equitable principles, much of which is apparently abandoned in the brief.

The main contention is answered by the statute itself. This is not a case of a capitalized association seeking incorporation, as a bank or trust company, which must have a certain proportion of its stock paid up. The statute provides ''that no such association shall

commence business in this State until it shall first submit to the Supervisor of Building and Loan Associations a detailed statement of its plan of doing business and a copy of the contracts proposed to be issued, and procure from him a certificate authorizing it to do business.'' Under this clear mandate, no steps can be taken towards the accumulation of a fund until the authority to do business has been obtained. The objection that the trustee certificates are assignable and trustees become and cease to be trustees by the mere purchase or sale of trust certificates, without any right in the creators and beneficiaries to object, is without merit. The right to sell is incident to ownership. We are unable to see any valid objection to the plan of doing business or the election of officers. [State ex rel. v. Swanger, 190 Mo. 561, 1. c. 570.] It is a matter   that concerns the contracting parties, purely a matter of convention, unless contrary to the statute.

''An association being solely a creature of convention between the members, no check exists upon its power to enact such constitution or by-laws as the associates may choose to adopt, so long as they do not provide for the commission of illegal acts, are not in themselves contrary to public policy, or do not affect vested interests. Such constitution and by-laws constitute a contract between the members, and are binding alike on the association and its members. The courts possess no power to pass on the question of the reasonableness of such rules and regulations as are agreed to by the associates for the conducting of their joint affairs. It has been uniformly held, however, that the courts may, in a proper case, construe and fix their meaning.'' [4 Cyc. 305.]

Counsel for relators sum up the matter in their brief:

''No valid objection can be made that the trustee certificates are to be assignable. The assignability of such certificates has long been recognized at common law. [King v. Webb, 14 East. 406; Warner & Roy v. Beers, 23 Wend. 1011.]

"The trust agreement makes full provision for safe-guarding the rights of the beneficiaries. It is shown by the best actuarial authority in this State that the plan is financially sound. In fact, this is conceded by the pleadings in this case, and respondent makes no point in that regard. When this is considered in connection with the further fact that the trustees managing this trust are at all times subject to the control of a court of equity and by virtue of Section 10263, supra are under the constant supervision of the Supervisor of Building and Loan Associations of Missouri, it becomes difficult to conceive how stronger safeguards could be made to protect the investing public."

II. The return recites: "The relator parties to the articles of association have failed to comply with any of the provisions of Sections 9237-9249, Revised Statutes 1919, relating to limited partnerships."

The pleader fails to allege wherein the articles of association fail to comply with the various sections indicated, or that such compliance is required. The allegation is simply the averment of a legal conclusion; not the statement of issuable facts, and is to be treated as no statement at all. [Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388; Lappin v. Nichols, 263 Mo. l. c. 291.]

Partnership.

In the brief, however, counsel for the *amicus curiae* contend that the relator association is a partnership and it cannot limit its liability. This issue is not made by the pleadings. If it were, it would be inconsistent with other contentions in the brief, that it is a bond investment company, a corporation, that it has no legal entity or artificial personality, that it is a co-operative association and a lottery. How can it be all these? How it can assume these protean characters at one and the same time is bewildering. The declaration that it is a corporation is a solemn negation that it is a partnership, or a joint-stock company, or a bond investment company. The pleas are inconsistent and self-destruc-

tive. [Wertheimer-Swarts v. McDonald, 138 Mo. App. 328, 1. c. 339; Darrett v. Donnelly, 38 Mo. 492; Ledbetter v. Ledbetter, 88 Mo. 1. c. 62; 31 Cyc. 150.] If it is a lottery, it is an outlaw and all contracts made with it are void.

Counsel cite in support of their contention that it is a partnership, Laney v. Fickel, 83 Mo. App. 60. Bond, J., was there considering the liability of a member of a joint-stock company engaged in manufacturing and trading to its creditors. The learned jurist said, at page 63: "While there is some variance in the authorities as to what steps must be taken before the members become liable in this manner to third parties, all the cases are agreed that such liability is consummate upon a showing that the member joined the association, attended its meetings and consented to the engagement out of which the liability arose. [Hunnewell v. Willow Springs Canning Co., 53 Mo. App. 245.] The case at bar presents all these elements of liability in plaintiff's connection with the company. He was therefore liable as a co-partner with his other associates for the claims sued upon by him, since they were valid obligations against the joint-stock company itself."

It is thus seen that the liability of the member was bottomed on his consent, while a partner is liable for the acts of the other partners in a trading concern within the scope of the partnership business, whether he consents or not. [30 Cyc. 503 et seq.]

The limitations on the liability of members is found in paragraphs B and M of the articles of association, which read:

"(B) That no trustee, director or officer of said savings institution shall be personally liable for any debts properly chargeable against said institution, or any fund or funds thereof.

"(M) That trustee certificates shall be issued to each trustee evidencing their interest in such form as the directors may provide, and said certificates shall con-

tain a clause providing that when the same has been paid in cash at its par value the liability of·said trustee is limited to the funds invested therein.''

It must be remembered that this is a non-trading concern. In Coleman v. Knights of Honor, 18 Mo. App. 189, 194. ROMBAUER J., said: ''Nor can we see how the member or those claiming under him can be heard to assert that the rules established by the corporation in that regard were not reasonable. The member is a voluntary party to the compact, and as such bound by it unless it is in derogation of some charter right, or is otherwise invalid as contravening some paramount provision of law. A by-law may be void as to strangers, or members who do not assent to it, and yet good as a contract between members of the corporation who do assent to it.''

.. In State v. Stone, 118 Mo. 388, the defendant represented as agent an association of one hundred residents of the State of New York, ''who were conducting insurance upon the manner of the ancient Lloyds'' (p. 394) before said individuals had procured a license to do business in Missouri. By the terms of the agreement or articles of association each of the one hundred subscribers agreed to deposit $1000, and it was stipulated that each subscriber should be separately liable to the amount authorized by him individually and not jointly liable with the other subscribers (p. 395). BURGESS J., said: ''If then we are correct in our position in construing the statute as including and meaning individuals, there is no apparent reason why defendant could not have obtained from, and why the Insurance Commissioner could not have issued to him, a valid certificate under Sections 5910 and 5911 of the statute, if defendant had shown to him that those whom he represents had complied with the law in regard to insurance companies doing business in this State'' (l. c. 400).

In Hammerstein v. Parsons, 38 Mo. App. 332, syllabus 1 reads: ''While the members of an unincorporated

association are partners *inter sese*, their rights against each other may be limited by contract, and the constitution and by-laws of the association constitute a contract between them.''

So, while the question is not raised by the pleading and need not be considered, it is clear that it was competent for the members to contract as to their liability *inter sese*. [See citation from 4 Cyc. 305, supra.]

III. It is contended that relator must be incorporated before it can do business; that the power to sue and be sued, to acquire, sell and convey property, to do business as a legal entity, and the powers incident thereto, are sovereign grants of powers possessed only by corporations and it is therefore subject to the chapter on corporations.

Corporation.

The answer to this contention is the statute itself. Section 10263, Revised Statutes 1919 expressly exempts associations of the character mentioned therein from the other provisions of Article X, Chapter 90, Revised Statutes 1919. The emergency clause of that act declares that ''such associations are now prohibited by law and should be encouraged.'' By that act the Legislature declared the policy of the State.

But it is said that the assumption of corporate powers, without a sovereign grant, brings an unincorporated association within the definition of a corporation. The statute itself is the sovereign grant. But for this enactment, associations of the character authorized thereby could not exist.

IV. Respondent contends that these associations are corporations by force of Section 11 of Article 12 of our Constitution which reads: ''The term 'corporation,' as used in this article, shall be construed to include all joint-stock companies or associations having power or privileges not possessed by individuals or partnerships.''

Constitutional Provision.

In Williams v. U. S. Express Co., 195 Mo. App. 362, the defendant contended that being a joint-stock company, it was not a suable entity. The court held, at page 364 (quoting Sec. 2963, R. S. 1909; now Sec. 9722, R. S. 1919, which is a copy of the section of the Constitution referred to), that: " 'A joint-stock company at common law was a hybrid midway between a corporation and a partnership; e. g., it had directors and officers, articles of association, a common capital divided into shares; these shares represented the interest of the members, were transferable without the consent of the other members, hence there was no *delectus personae,* and the death of the member did not dissolve the company.' [State ex rel. Pearson v. Louisiana & Missouri River Rd. Co., 196 Mo. l. c. 536.]

"Construing together Sections 2963 and 2990 of Article 1, Chapter 33, Revised Statutes 1909, and Section 1760, Article 4, Chapter 21, Revised Statutes 1909, we cannot but arrive at the conclusion that the defendant, being a joint-stock company, and, therefore, having powers and privileges not possessed by individuals and partnerships, must be treated as a corporation for the purposes of said Chapters 33 and 21, and as such can 'sue and be sued, complain and defend in any court of law or equity' as a legal entity."

In Weihtuechter v. Miller, 276 Mo. 322, l. c. 328, WHITE, C., referring to Williams v. U. S. Express Co., supra, and other cases, shows that joint-stock companies have been recognized as entities entitled to sue and be sued, and that the "Legislature evidently understood that such associations (voluntary unincorporated associations) could be sued, for by the Act of 1915 they provided a method for service of process upon them the same as upon corporations. [Laws 1915, p. 225.]"

In Great Southern Fire Proof Hotel Co. v. Jones, 177 U. S. 449, the court, in construing a similar article in the Constitution of Pennsylvania, said: "The only effect of the clause is to place the joint-stock companies

Vol. 288]   APRIL TERM, 1921.   703

State ex rel. Home Savings Ins. v. Lee.

or associations referred to under the restrictions imposd by that article upon corporations, and not to invest them with all the attributes of corporations" (.1 c. 456).

This contention was made in Spotswood v. Morris, 12 Idaho, 360, and the section of the Idaho Constitution, identical with Section 11, supra, was cited. In disposing of the point SULLIVAN, J., said: "The association under consideration is not a corporation exercising any of the powers or privileges of corporations not possessed by individuals or partnerships. It is a voluntary association. To possess or exercise powers or privileges of corporations requires a sovereign grant—a franchise which said association has not and does not profess to possess" (1. c. 375).

The court noted the fact that eighteen states, among them Missouri, had practically identical sections, defining corporations, in their constitutions.

It is obvious that the article of the Constitution and statute referred to do not by legislative fiat convert joint-stock companies or voluntary associations into corporations or require their incorporation before doing business. At common law voluntary unincorporated associations could not sue or be sued. [Lilly v. Tobbein, 103 Mo. 477.] By an amendment to Section 1760, Revised Statutes 1909, suits may be brought against any such association "in the name it has selected." [Sec. 1186, R. S. 1919.] Respondent will not contend that this amendment required such societies to be incorporated or made them corporations.

V. The contention that the relator association is a bond-investment company and cannot do business without compliance with Sections 10333-10338, Revised Statutes 1919, is unsound, for the reason that

Bond—Investment Company.

it is not a corporation, nor does it seek to do a bond-investment business within the meaning of the statute referred to.

Section 10263, Revised Statutes 1919, under which relator seeks to do business is a part of Article X, Chapter 90, Revised Statutes 1919, and expressly exempts associations organized under it from compliance with the other sections of that article. The Legislature, in its wisdom, has required that every association organized under this section shall submit to the Supervisor of Building and Loan Associations a detailed statement of its plans, etc., and procure from him a certificate authorizing it to do business, and imposes on the supervisor the duty of examining into such association, and if he finds that the business of such association is not in conflict with the laws and Constitution of this State, he shall issue his certificate authorizing it to do business. This requirement is exclusive. The relator is not required to obtain permission to do business from the State Bank Commissioner under Section 11919, Revised Statutes 1919, commonly called the "Blue Sky Law." *Expressio unius est exclusio alterius.*

VI. The respondent's return states: "The plan of said association is financially unsound and is such as

Unsound Plan.

will make the loan and trust fund insolvent, and it had inherent defects that will tend towards its dissolution. The surrender values at or after loan are more than the reserve requirements of the loan and trust fund."

On the other hand, in the briefs of counsel for the *amicus curiae,* they estimate the "profits of the association for eleven years from loan and trust fund to be $370,161.50 and compound interest, eleven years at 7.7208 per cent on $100,000 capital fund, $126,615.78; total profits of association, eleven years, $496,776.78 Per annum on $100,000 capital fund, 45.16%." They say: "The share of the association in the earnings of loan and trust fund is very large as above shown. Relators have not shown what they will be, nor have they shown that the agreement is fair in this respect. Such a part-

nership in profits between trustee and beneficiary should not be countenanced by a court of equity.''

Suffice it to say that the very large and unconscionable profits estimated in the brief disprove the contention of the respondent that the plan of doing business adopted by the relator spells financial ruin.

The opinions of the actuaries attached to the petition are fairly summarized in the statement. It is there shown that the undivided share of each certificate owner in the fund and its earnings at 7.72% interest, will amount to $1248.37 per $1000, showing a profit of $248.37 for the exclusive benefit of the holder. ''But under the terms of the certificate 'all surplus' earnings from interest, cash surrender and partial paid up values belong to the non-borrowing owners of trust certificates to the extent of, but not to exceed $308 per $1000 face value.''

These considerations are matters of contract. Courts, as it has been seen, have no power to pass on the reasonableness of the terms adopted by the contracting parties.

VII. It is claimed in the return that the name of the association ''Great American Home Saving Institution'' is an imitation of the American Home Building and Loan Association, a corporation domiciled in the City of St. Louis, or is so near thereto as to be likely to mislead the public. It is admitted by the pleadings that prior to the time relators applied for a certificate to do business, relators were advised by the then Secretary of State that the name adopted ''was available for their use and that same did not conflict with any corporate name then in use in this State.''

Name.

The name of a corporation or of an unincorporated association is a necessary element of its existence and the right to its exclusive use will be protected upon the same principle that persons are protected in the use of trade marks. [State ex rel. v. McGrath, 92 Mo. 355, l. c. 357; 5 C. J. p. 1343, sec. 31.] In Supreme Lodge, Knights

288 Mo.—45

of Pythias v. Improved Order, Knights of Pythias, 113 Mich. 133, 38 L. R. A. 658, l. c. 662, it was held that the latter name was not an infringement on the former. The court said: "To me it is self-evident that no careful person could think that these two orders were identical, and, as has been said in cases of this class the question is whether the similarity is calculated to mislead the ordinary run of mankind. There certainly is just as much distinction between these two names as there is between that of the Episcopal Church and the Reformed Episcopal Church, or that of the Presbyterian Church and the United Presbyterian Church."

We think there is little, if any, resemblance between the name of the relator association and that of the American Home Building and Loan Association, at least none that is calculated to mislead the ordinary run of mankind.

VIII.    Respondent contends that Section 10263, Revised Statutes 1919, denies the equal protection of the law, in violation of Section 1 of Article XIV of the Amendments to the Constitution of the United States, in that it allows the association referred to to be *Inspection and Supervision: Constitutionality.* licensed, supervised and examined without cost to such association, and throws the burden of the expense thereof upon the building and loan associations. Section 10230, Revised Statutes 1919, provides that every incorporated building and loan association shall make semi-annual reports to the supervisor and that with such report each association shall pay twenty-five cents for each $1000 of assets shown by such report, which payments go into the State Treasury, to make up a fund known as the "Building and Loan Supervision Fund." The salaries of the supervisor and of his examiners and employees and the cost of maintaining the department are paid out of this fund. Section 10263 makes no requirement of incorporated building and loan associations.

Can the Missouri State League of Building and Loan Associations raise this question? It is not a party to this

case and cannot be heard to call in question the constitutionality of this act in an action between other parties.

"Laws enacted by the Legislature are presumed to be valid and even if defective, because violative of some provision of the State Contitution, are not void, although they may in a proper case be voidable; that is, upon complaint by a party whose rights are impaired by the statute. Upon this point Cooley says:

'The statute is assumed to be valid, until some one complains whose right it invades. Prima-facie and upon the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained. Respect for the Legislature, therefore, concurs with well-established principles of law in the conclusion that such an act is not void, but voidable only; and it follows, as a necessary legal inference from this position, that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by strangers.'" [State ex rel. v. Blake, 241 Mo. 100, l. c. 107.] See, also, Ex Parte Tartar, 213 S. W. 94-96; State v. Bockstruck, 136 Mo. 335, 38 S. W. 317; State v. Bixman, 162 Mo. 1, 62 S. W. 828.]

We think it a misconception that the statute grants to relator a special privilege or immunity.

Section 10263 requires the supervision of the Supervisor of Building and Loan Associations "to examine into such associations," and provides that "the trustees or managers of such association shall from time to time furnish such surety bonds to secure the faithful performance of their trust as such Supervisor of Building and Loan Associations shall reasonably require, and be subject to his supervision and examination, similar in so far as applicable to his supervision and examination of building and loan associations."

708    SUPREME COURT OF MISSOURI,

State ex rel. Home Savings Ins. v. Lee.

It cannot be reasonably inferred from this that this section grants or contemplates free inspection or free service in any respect. When the statute requires supervision and examination similar in so far as applicable to the supervision of building and loan associations, it adopts and incorporates the statute referred to, so far as applicable, and by necessary implication entitles the supervisor to the fees appertaining to such service. The laborer is worthy of his hire. [36 Cyc. 1152; Crohn v. K. C. Home Tel. Co., 131 Mo. App. 313.]

IX. It is said that Section 10263, Revised Statutes 1919, violates Section 5 of Article 12 of the Constitution of Missouri, in that it permits corporations to conduct their business in such a manner as to infringe the general well-being of the State. Section 10263 has

*Well-Being of State.* no reference to corporations. It deals solely with unincorporated associations. But, aside from this, Section 10263 subjects this class of societies to the wholesome supervision and examination of the supervisor of building and loan associations. It is not seen that it permits them to conduct their business in a manner to infringe on the general well-being of the State.

X. Finally, it is said that Section 10263, Revised Statutes 1919, permits lotteries in violation of Section 10 of Article XV of the Constitution. It authorizes the accumulation of a fund or funds for the purpose of enabling the contributors to such funds or their assigns, to secure loans. A simple reading of the statute excludes every conception of a lottery. It forbids the issue of a certificate authorizing an association to do business if the business is in conflict with the laws and Constitution of the State. Section 10 of Article 14 of the Constitution outlaws lotteries.

Criticism is made of the plan for making loans; that they must be made in the order of their application. Any other plan would savor of favoritism. Counsel cite Si-

ver v. Investment Co., 183 Mo. 41. The facts in that case show that the scheme was an unmitigated gamble, if a scheme in which the contributor will always fail and the investment company can never lose, may be so characterized. The difference between that case and the case at bar is the distance between the poles.

There are other suggestions made in the return, e. g., that the Act of 1919, Section 10263, is void because the title is defective and because it is special and class legislation and violative of public policy. Although they are not mentioned in the brief, we have considered these suggestions and find no merit in them. Courts cannot declare statutes void on the ground that they are against sound public policy and morals and liable to lead to corruption and oppression. [8 Cyc. 778.]

Finding, as we do, that the relators are clearly entitled to a certificate authorizing them to do business as an unincorporated association under Section 10263, Revised Statutes 1919, it is ordered that a peremptory writ be issued as prayed. All concur except *Elder* and *Woodson, JJ.*, not sitting.