STATE OF IOWA ex rel. BOARD OF RAILROAD COMMISSIONERS, Appellant, v. J. ALBERT B. MARTIN et al., Appellees.

No. 39986.

APRIL 14, 1930.

J. H. Henderson, Commerce Counsel of Iowa, and Stephen Robinson, Assistant Commerce Counsel, for appellant.

No appearance for appellee.

MORLING, C. J.—The suit is on the relation of the board of railroad commissioners, to restrain defendant from operating as a motor carrier without certificate. The petition was filed  January 4, 1929, and alleges that defendant, since December 19, 1928, has been operating motor vehicles carrying passengers between fixed termini and over regular routes to and from Omaha, Davenport, and Clinton, for compensation, "without the required certificate;" that the action of defendant is a willful and defiant violation of the laws of the state, particularly Chapters 252-A1 and 252-A2, Code of Iowa, 1927, and in direct contravention of the decisions, rules, and regulations of the board of railroad commissioners, "and results in an unlawful and unauthorized use of the public highways,. all to the great and irreparable damage of the state of Iowa and the people thereof in the maintenance and operation of adequate and well regulated systems of transportation." The answer admits that defendant is operating without having procured a certificate of convenience and necessity, but alleges that he is engaged exclusively in interstate commerce, and that the granting of the injunction would be an unlawful interference with interstate commerce; alleges in general terms that Chapters 252-A1 and 252-A2 of the Code are in conflict with the commerce clause and Fourteenth Amendment to the Federal Constitution, and that Chapter 252-A2 is in conflict with Section 30, Article 3, state Constitution, because it is class legislation; that the "defendant is able, ready, and willing to comply with and conform to any and all applicable regulations imposed by the state of Iowa, or by its board of railroad commissioners, under appropriate legislation relating

to his operation as a motor carrier of passengers engaged exclusively in interstate commerce;'' that he has at all times ''been able, ready, and willing to pay a reasonable tax or compensation for use of the highways of the state of Iowa, and for the purpose of this suit, he is not now questioning the reasonableness of the tax imposed by Chapter 252-A2 * * * that he is willing to file with the commission liability insurance in a reasonable amount against lawful claims for damages growing out of his operation, suffered within the state of Iowa by persons other than passengers, and also to file with the commission liability insurance covering lawful claims for damages to property suffered within the state of Iowa and growing out of his operation other than the property belonging to his passengers and in his possession;'' that he has always observed the law with reference to speed, lighting, safety, sanitation, condition, age and character of drivers, and the law of the road; that the plaintiff has a plain, speedy, and adequate remedy at law, and the granting of the writ would result in irreparable injury to defendant. At the trial, on April 24, 1929, it was admitted that defendant was operating between fixed termini at Omaha and Chicago through Iowa over highways named; that defendant delivered to each passenger a ''travelers' insurance policy,'' with age limits 18 to 70; that defendant had not made application to the board of railroad commissioners for a certificate, nor had he paid the taxes provided for in Chapter 252-A2, nor made any report, as required by Chapters 252-A2 and 252-A1, nor filed with the commission any insurance policy.

The trial court held that the legislature was without jurisdiction to require such interstate carriers to carry insurance policies covering damage to the property of interstate passengers or for personal injury to such passengers. He held that the legislature might impose taxes and licenses and provide rules and regulations for the welfare and safety of its citizens, but that they must be reasonable, fair, and just, and not discriminatory or confiscatory. It does not appear that he held any of the rules and regulations to be violative of these essentials.

Defendant makes no argument in this court. There has been filed, however, ''brief and argument *amicus curiae*,'' assailing the statute because it requires interstate carriers to fur-

nish liability insurance for the protection of passengers or property carried in interstate commerce, because the state cannot deny interstate carriers the right to operate in interstate commerce over the public highways of the state, and because "Chapter 252-A2 is unconstitutional, on the ground that the penalties imposed by it are so enormous and overwhelming that they constitute a denial to apply to the court for the purpose of testing the validity of the act." This brief seems to be in the interest of "a great many interstate motor carriers operating through the state of Iowa." It is not shown to have been filed in behalf of any party to this action. The decision of the lower court went against the plaintiff, on the ground apparently that it was beyond the power of the legislature to require interstate carriers to furnish liability bond, as prescribed by Section 5105-a26, Code, 1927. It does not appear that the statute was held invalid on any other ground. The correctness of this decision is the only question before the court. The court will not, at the instance of a stranger to the litigation, search for or pass upon grounds of invalidity of the statute not presented by the parties. *New York Life Ins. Co. v. Hardison,* 199 Mass. 190 (85 N. E. 410); *State ex rel. Great Am. H. Sav. Inst. v. Lee,* 288 Mo. 679 (233 S. W. 20).

That defendant is operating in this state as a motor-vehicle carrier, and therein using the public highways of the state for his own private profit, in the operation of his private business, is conceded. He asserts that he is operating only in interstate commerce. This is not denied by plaintiff. Defendant is making use of the highways of the state from one end to the other as a carrier. It would be difficult almost to the point of impossibility for the state to refute defendant's contention that he is not engaging in intrastate carriage. This fact furnishes strong argument for the applicability of the statutory license requirement, in order that proper supervision may be exercised and evasion avoided. See *Barrows v. Farnum's Stage Lines,* 254 Mass. 240 (150 N. E. 206); *Boston & M. Railroad v. Cate,* 254 Mass. 248 (150 N. E. 210). In the use of the highways, carriers may properly be subjected to reasonable nondiscriminatory regulations, in the interest of public safety and convenience, and may be required to make reasonable compensation to the

state for the use of its highways for their private profit. Licensing is a proper means for securing proper oversight and compliance with the laws of the state and the reasonable regulations of the proper administrative body, acting within its prescribed authority. *Bekins Van Lines v. Riley*, 280 U. S. 80 (74 L. Ed. 178); *Packard v. Banton*, 264 U. S. 140 (68 L. Ed. 596); *Sprout v. City of South Bend*, 277 U. S. 163 (72 L. Ed. 833); *Michigan Pub. Util. Com. v. Duke*, 266 U. S. 570 (69 L. Ed. 445); *Kane v. New Jersey*, 242 U. S. 160 (61 L. Ed. 222); *Hendrick v. Maryland*, 235 U. S. 610 (59 L. Ed. 385); *Frost & Frost Truck Co. v. Railroad Com.*, 271 U. S. 583 (70 L. Ed. 1101). Carriers in interstate commerce are subject to the like uniform and non-discriminatory prohibitions and regulations, subject to further condition that they do not unreasonably burden interstate commerce. Idem; *Interstate Busses Corp. v. Blodgett*, 276 U. S. 245 (72 L. Ed. 551); *Atlantic Pacific Stages v. Stahl*, 36 Fed. (2d. Ser.) 260.

The statute under consideration (Chapters 252-A1 and 252-A2, Code, 1927,) is concededly reasonable and valid in the most of its requirements, even as applied to motor-vehicle carriers operating in interstate commerce. The judgment of the trial court is that the legislature is without jurisdiction to require interstate carriers to carry insurance policies covering damage to the property of interstate passengers or for personal injury to such passenger. Defendant, however, has not applied to the board of railroad commissioners for a license. Defendant has not offered to furnish any bond whatever. He alleges that he is able, ready, and willing to comply with the applicable regulations imposed by the state or by the board of railroad commissioners under appropriate legislation, and to pay the prescribed tax, which he concedes to be reasonable, and which, under the law, he is required to pay for his use of the highways for his own private profit. In short, defendant proposes to dictate his own conditions as to when he will pay the tax and as to what regulations he will concede to be reasonable and authorized and when he will comply with them. He stands here defying the license requirements of the state on the asserted ground that the law is unconstitutional in one particular: namely, that the requirement of a liability bond unreasonably burdens interstate commerce. The statute is general in its terms,

as in the nature of the case it must be. Its purpose is well expressed in the title (Chapter 5, Acts of the Forty-first General Assembly) :

"An act to provide for the supervision and regulation by the board of railroad commissioners of this state of persons engaged in the public transportation of persons or property for hire by motor vehicles and for the enforcement of this act * * *"

By Section 5105-a3, Code, 1927, "the commission shall also have power and authority by general order or otherwise to prescribe rules and regulations applicable to any and all motor carriers." The statute may not be held to be invalid as a whole, nor its application to interstate carriers wholly denied, because some of its provisions, which, in broad terms, include all carriers, intrastate and interstate, without discrimination, may, as to interstate carriers, be inoperative under the commerce clause of the Federal Constitution. The commerce clause may operate to limit the applicability of some of the broad (and otherwise unrestricted) provisions of the statute. If so, the limitation should be observed, and the general language of the statute restrained accordingly. The commerce clause operates merely as an impediment to the application and enforcement of the statute to the extent that such application and enforcement would be in contravention thereof, but the statute is not void merely because its terms, if given unrestricted interpretation, might come in conflict with the interstate commerce clause of the Federal Constitution. *In re Rahrer*, 140 U. S. 545, 560, 563, 564; *Blair v. Ostrander*, 109 Iowa 204; *McCollum v. McConaughy*, 141 Iowa 172; 12 Corpus Juris 105. It is not to be presumed that the legislature intended to invade the field in which the Federal government has exclusive jurisdiction, and the statute should, if possible, be so construed as to avoid such a conflict. *St. Louis S. W. R. Co. v. Arkansas*, 235 U. S. 350 (59 L. Ed. 265) ; *Commonwealth v. Gagne*, 153 Mass. 205 (26 N. E. 449). See *United States v. Palmer*, 3 Wheat. (U. S.) 610; *St. Louis, S. F. & T. R. Co. v. Seale*, 229 U. S. 156, 157 (57 L. Ed. 1129, 1133) ; *Staley v. Illinois Cent. R. Co.*, 268 Ill. 356 (109 N. E. 342) ; *State v. Gish*, 168 Iowa 70; *Trainer v. Kossuth County*, 199 Iowa 55, 59 ; *Leonard v. Eckwall*, 124 Ore. 351 (264 Pac. 463) ; *Smallwood v. Jeter*, 42 Ida. 169 (244 Pac. 149).

Section 5105-a6. "It is hereby declared unlawful for any motor carrier to operate or furnish public service within this state without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation."

Before the certificate can issue, the commission is required by Section 5105-a7 to find that the service proposed to be rendered will promote the public convenience and necessity. The commission is authorized by Section 5105-a9 to "attach to the exercise of the rights therein [in the certificate] conferred such terms and conditions as in its judgment the public convenience and necessity may require * * *" The commission "may hear testimony to aid it in determining the propriety of granting the application." Section 5105-a17.

"No certificate shall be issued until and after the applicant shall have filed with the commission a liability insurance bond * * * to protect the interests of the public with due regard to the number of persons and amount of property involved, which liability insurance bond shall bind the obligors thereunder to make compensation for injuries to persons and loss of, or damage to, property resulting from the operation of such motor carrier." Section 5105-a26.

Because of the commerce clause, the state may not condition the right to engage in interstate commerce upon its determination as to whether or not public convenience and necessity would be promoted or retarded thereby. *Barrett v. City of New York,* 232 U. S. 14, 31 (58 L. Ed. 483) ; *Buck v. Kuykendall,* 267 U. S. 307 (69 L. Ed. 623) ; *Bush & Sons Co. v. Maloy,* 267 U. S. 317 (69 L. Ed. 627) ; *Sprout v. City of South Bend,* 277 U. S. 163, 171 (72 L. Ed. 833, 838) ; *Atlantic Pacific Stages v. Stahl,* 36 Fed. (2d Ser.) 260; *Foster-Fountain Packing Co. v. Haydel,* 278 U. S. 1 (73 L. Ed. 147) ; *State ex rel. Great Am. II. Sav. Inst. v. Lee,* 288 Mo. 679 (233 S. W. 20) ; *Hope Natural Gas Co. v. Hall,* 102 W. Va. 272 (135 S. E. 582). Therefore, the requirement of a finding that the service proposed to be rendered will promote the public convenience and necessity cannot operate, so far as interstate commerce may be involved. But broad powers of supervision and wide discretion in adjusting

details are given to the commission. By Section 5105-a4, "all control, power, and authority over railroads and railroad companies now vested in the commission, in so far as the same is applicable, are hereby specifically extended to include motor carriers." Section 5105-a18 reads:

"It [the commission] may grant the application in whole or in part upon such terms, conditions, and restrictions and with such modifications as to schedule and route as may seem to it just and proper."

Defendant had made no application to the commission. He has not invoked its discretionary powers, nor has he complied with the provisions of the law so far as they are applicable to an interstate carrier. Since he has not applied for a license, and has not been denied a license for illegal reasons, the contention that illegal requirements might be made is not open to him, if the board had authority to grant the license without requiring compliance with such illegal conditions. *State v. Dowling*, 204 Iowa 977; *City of Milwaukee v. Rissling*, 184 Wis. 517 (199 N. W. 61). The requirement for insurance is valid as to interstate carriers if limited to damages suffered within the state by persons other than the passengers. *Sprout v. City of South Bend*, 277 U. S. 163 (72 L. Ed. 833). We have construed the bond furnished pursuant to Section 5105-a26 as one imposing liability upon carriers for damages sustained by intrastate passengers from the carrier's negligence. *Crozier v. Hawkeye Stages*, 209 Iowa 313.

By Section 5105-a26 (since amended by Chapter 130, Acts of the Forty-third General Assembly), "no certificate shall be issued until and after the applicant shall have filed with the commission a liability insurance bond, in form to be approved by the commission * * * in such penal sum as the commission may deem necessary to protect the interests of the public with due regard to the number of persons and amount of property involved, which liability insurance bond shall bind the obligors thereunder to make compensation for injuries to persons and loss of, or damage to, property resulting from the operation of such motor carrier. * * *"

The limitation of the commerce clause must be read into the statute, and its broad terms limited thereby. The statute

does not specifically prescribe the form or condition of the bond, but leaves the "form to be approved by the commission." It is not to be anticipated that the commission will require a bond in form violative of the constitutional provision. *Atlantic Pacific Stages v. Stahl*, 36 Fed. (2d Ser.) 260. The statutory declaration of the extent of the obligation is, as to interstate carriers, limited to damages suffered within the state by persons other than passengers. The authority of the commission is likewise limited. The record furnishes no reason for assuming that the board will undertake to exceed its limitations. As the case is presented here, the license requirements are applicable, subject to the restrictions indicated, which have not been exceeded, either in fact or in prospect. Defendant is, therefore, operating in violation of the law of the state. Under the broad provisions of Chapters 252-A1 and 368, the board is acting within its authority in bringing this suit.—*Reversed.*

All the justices concur.