**DOHRN TRANSFER CO. v. HOEGH,**
Atty. Gen. of Iowa et al.
Civ. No. 2–386.

United States District Court,
S. D. Iowa, C. D.
Nov. 3, 1953.

178

David Axelrod, Chicago, Ill. (Axelrod, Goodman & Steiner, Chicago, Ill., and Tipton & Tipton, Muscatine, Iowa, of counsel), for plaintiff.

Leo A. Hoegh, Atty. Gen. of Iowa, and Kent Emery, Asst. Atty. Gen. of Iowa, for defendants Leo Hoegh, Atty. Gen. of Iowa, and Pearl McMurray, Commissioner of Public Safety of Iowa.

D. C. Nolan, Special Assistant Commerce Counsel, Iowa City, Iowa, Ernest Porter, Commerce Counsel of Iowa, and James E. Steffarud, Assistant Commerce Counsel, Des Moines, Iowa, for defendants Carl W. Reed, Chairman, Iowa Commerce Commission, David Long, Commissioner, Iowa Commerce Commission, and John M. Ropes, Commissioner, Iowa Commerce Commission.

Before THOMAS, Circuit Judge, and GRAVEN and RILEY, District Judges.

PER CURIAM.

On June 29th, 1953, the plaintiff filed its complaint herein asking for a declaratory judgment, preliminary injunction, and a permanent injunction. On June 30th, 1953, by order of District Judge William F. Riley, the hearing on the application of the plaintiff for a preliminary injunction was set for hearing at the Federal Court House at Des Moines, Iowa, on July 8th, 1953. On July 2d, 1953, an order was entered by Judge Archibald K. Gardner, Chief Judge of the United States Court of Appeals for the Eighth Circuit, organizing a three-judge court comprised of Circuit Judge Seth THOMAS, District Judge William F. RILEY, and District Judge Henry N. GRAVEN to hear the case. On July 8th, 1953, the application of the plaintiff for a preliminary injunction was heard by District Judge William F. RILEY. On July 13th, 1953, District Judge William F. RILEY entered an order for a preliminary injunction. On August 3d, 1953, the case came on for trial before the said three-judge court at the Federal Court House at Des Moines, Iowa. The parties presented their evidence on August 3d and 4th, 1953. On August 4th, 1953, the parties completed the presentation of their evidence, arguments of counsel were made, and the said case was submitted to the said three-judge court and by that court taken under advisement. Now, to-wit, on this 3d day of November, 1953, the said court, being fully advised in the premises, makes and enters the following Findings of Fact, Memorandum, Conclusions of Law, and Order for Judgment.

Findings of Fact

1. The plaintiff, Dohrn Transfer Company, is a corporation organized and existing under the laws of the State of Illinois. Its principal office is at Rock Island, Illinois. The defendant Leo Hoegh is the Attorney General of the State of Iowa. The defendant Pearl McMurray is the Commissioner of Public Safety of Iowa. That position is provided for by Section 321.2, Code of Iowa 1950, I.C.A. Under the provisions of

Section 321.3, Code of Iowa 1950, I.C.A., as such Commissioner he is vested with the power and is charged with the responsibility of administering and enforcing the provisions of Chapter 321 of the Code of Iowa 1950, I.C.A. That Chapter contains, among other provisions, the provisions relating to the matter of registration of motor vehicles, including registration or license fees. The defendants Carl W. Reed, David Long, and John M. Ropes are members of the Iowa Commerce Commission. That commission is provided for by Section 474.2 Code of Iowa 1950, I.C.A. Chapter 325, Code of Iowa 1950, I.C.A., makes provision for the certification of motor carriers. Section 325.6 of that Chapter prior to a recent amendment hereafter referred to provided as follows:

"It is hereby declared unlawful for any motor carrier to operate or furnish public service within this state without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation."

The Iowa Commerce Commission is by related sections given jurisdiction and authority over motor carriers and is the commission referred to in Section 325.6, Code of Iowa 1950, I.C.A., just above set out.. Section 325.3, Code of Iowa 1950, I.C.A., provides, in part, as follows:

"The commission shall also have power and authority by general order or otherwise to prescribe rules and regulations applicable to any and all motor carriers. * * * "

The Iowa Commerce Commission was formerly known as the Iowa Board of Railroad Commissioners. See Section 7866, Code of Iowa 1935. William S. Beardsley, Governor of Iowa, was named as a party defendant prior to the hearing on the application for a preliminary injunction. At that hearing he was dismissed as a party defendant.

2. The Mississippi River constitutes the eastern boundary line of the State of Iowa. Starting on the north line of the State of Iowa and continuing to a point in the vicinity of Guttenberg that river follows a generally southern course. Starting in the vicinity of Guttenberg that river makes a large and long bend to the east. That bend results in a large bulge to the east. That bulge starts in the vicinity of the Town of Guttenberg and ends in the vicinity of the City of Muscatine. From Muscatine south to the City of Keokuk near the southern border of Iowa that river follows a general southerly direction with small bulges to the east and west. The City of Clinton is situated on the large bulge on the Iowa side of the river. South of Clinton on the Iowa side of the river, on the lower side of the large bulge, is situated the City of Davenport. Adjacent to it, on the Iowa side, is the City of Bettendorf. Across the river from those cities, on the Illinois side of the river, is situated the City of Rock Island. South of Davenport on the Iowa side of the river, in the area of one of the smaller bulges, is situated the City of Burlington. South of the City of Burlington on the Iowa side of the river, in the vicinity of the southern border of Iowa, is situated the City of Keokuk. Because of the location of Clinton on the large bulge referred to, the Cities of Davenport, Burlington, and Keokuk are west of that City. Because of the location of Davenport on the lower part of the large bulge, it is east of the Cities of Burlington and Keokuk. The City of Burlington is east of the City of Keokuk. The City of Galesburg, Illinois, is around forty miles from the Iowa border to the north and east of the Cities of Burlington and Keokuk. All of the cities referred to, except Galesburg, are situated on the Mississippi River. The cities referred to have the following populations according to the 1950 census:

Bettendorf, Iowa .................. 5,132
Burlington, Iowa ................ 30,613
Clinton, Iowa .................... 30,379
Davenport, Iowa ................. 74,549
Keokuk, Iowa .................... 16,144
Rock Island, Illinois ............. 48,594
Galesburg, Illinois .............. 31,425

There are paved highways running in a general north and south direction on both

sides of the river. Because of the presence of the large bulge and some of the smaller bulges, the travel distance on main highways between some of the Iowa cities referred to is shorter on the Illinois side of the river than it is on the Iowa side of the river. In other cases the travel distances on main highways between the Iowa cities referred to are the same on both sides of the river. In other cases the travel distances on the Illinois side are slightly longer. The travel distance between Rock Island, Illinois, and Burlington, Iowa, using the Illinois highways, is 73 miles. The travel distances between the following Iowa cities are as follows:

| | | |
|---|---|---|
| Bettendorf to Burlington | thru Illinois | 77 miles |
| | thru Iowa | 81 miles |
| Bettendorf to Clinton | thru Illinois | 38 miles |
| | thru Iowa | 35 miles |
| Bettendorf to Keokuk | thru Illinois | 120 miles |
| | thru Iowa | 124 miles |
| Burlington to Clinton | thru Illinois | 116 miles |
| | thru Iowa | 116 miles |
| Burlington to Davenport | thru Illinois | 74 miles |
| | thru Iowa | 78 miles |
| Burlington to Keokuk | thru Illinois | 43 miles |
| | thru Iowa | 43 miles |
| Clinton to Davenport | thru Illinois | 41 miles |
| | thru Iowa | 38 miles |
| Clinton to Keokuk | thru Illinois | 159 miles |
| | thru Iowa | 159 miles |
| Davenport to Keokuk | thru Illinois | 117 miles |
| | thru Iowa | 121 miles |

The desirability of using the highways on one or the other side of the river could be affected by highway conditions and by the conditions in regard to bridges.

3. On January 10th, 1936, the plaintiff filed an application with the Interstate Commerce Commission for a certificate of public convenience and necessity for the interstate transportation by motor carrier. It claimed that it and its predecessor since prior to June 1st, 1935, had been engaged in the interstate transportation by motor carrier between a large number of points in Illinois, Iowa, and Missouri. The plaintiff in its application asked that a certificate of public convenience and necessity be issued to it covering the places between which it was transporting goods as a motor carrier on June 1st, 1935, and the routes by which it was transporting such goods. In said application the plaintiff claimed the right to transport goods by motor carrier between points in Iowa, Illinois, and Missouri. The Iowa points involved were the border points of Davenport, Bettendorf, Clinton, Burlington, and Keokuk. The Interstate Commerce Commission directed that a hearing be held on the plaintiff's application. A number of protests were made to the granting of the plaintiff's application. At the hearing a number of the protestants appeared by counsel. The Iowa Board of Railroad Commissioners (now Iowa Commerce Commission) appeared by counsel at the hearing. An extended hearing was held and the application was submitted on December 6th, 1937. At said hearing there was presented to the Interstate Commerce Commission an analysis of more than 19,000 freight bills covering shipments transported by the plaintiff and its predecessor during the period July, 1933, to September, 1936, which freight bills included the shipments between the points involved. On January 12th, 1938, the Interstate Commerce Commission

rendered its decision on the plaintiff's application No. MC–33087. In its decision the following statement appears:

"Protestants urge that applicant's operations in Iowa and Missouri on and since June 1, 1935, were not and have not been *bona fide*, because of non-compliance by it with the laws of those States. * * * "

In its decision the Interstate Commerce Commission found and determined that the plaintiff and its predecessor on June 1st, 1935, and continuously since that time had been in bona fide operation as a common carrier by motor vehicle of general commodities in interstate or foreign commerce between the points and over the routes described in its application and that a certificate of public convenience and necessity should be granted the plaintiff authorizing the continuance of such operations. Such certificate was thereupon issued, which certificate has been at all times since in full force and effect. Exhibit No. 15 in this case was Exhibit No. 6 in the hearing before the Interstate Commerce Commission. That Exhibit shows that during the years of 1933, 1934, 1935, and 1936 the plaintiff and its predecessor as common carrier by motor vehicle transported substantial quantities of commodities between the cities of Davenport, Bettendorf, Burlington, Clinton, and Keokuk. The record of the hearing before the Interstate Commerce Commission shows that such commodities were being transported between those points by use of the Illinois highways.

4. Under the rule-making powers granted it by Section 325.3, Code of Iowa 1950, I.C.A., the Iowa Commerce Commission, at a time not shown of record, adopted Rule MT–46. That Rule is as follows:

"Rule MT–46. *Interstate carriers.* Chapters 325 and 326, The 1950 Code, as amended, together with the rules and regulations thereunder adopted by the Commission insofar as may be applicable, govern carriers affording services of a strictly interstate character.

"Application for a Certificate covering such an operation shall be made upon forms prescribed. A showing of convenience and necessity before this Commission is not a condition precedent to the granting of an interstate Certificate. Therefore, no hearing is held for this purpose and Rules MT–15 and MT–16 of these Rules and Regulations may be disregarded when application is submitted. Applicant should have first complied with the Motor Carrier Act, administered by the Interstate Commerce Commission and the Rules and Regulations thereunder adopted.

"Interstate carriers need not file with this Commission policy, policies or surety bond providing the so-called cargo coverage, but may voluntarily do so when such policy, policies or surety bond are endorsed as required by Rule MT–5. Interstate carriers may file certificates of insurance as provided for by Section 325.26 of Chapter 325, The Code 1950, as amended."

That Rule relates to interstate motor carriers. As stated in the Rule, a certificate of convenience and necessity is not a condition precedent to its issuance. The certificates provided for in that Rule are usually and generally granted without hearing and without notice. Certificates of public convenience and necessity are only granted after notice and hearing. It is clear that the certificates provided for in Rule MT–46 are non-discretionary in character. There is no record of any application for such certificate having been denied. Certificates of public convenience and necessity are discretionary in character.

5. The proceedings of the Interstate Commerce Commission relating to the plaintiff's certificates of public convenience and necessity are known as MC–33087 and Sub. No. 16. On July 23d, 1942, January 27th, 1944, June 23d, 1948, and November 10th, 1948, the plaintiff was granted additional certificates of public convenience and necessity as a common carrier by motor vehicle in in-

terstate commerce. The certificates of June 23d, 1948, and November 10th, 1948, are a consolidation of the previous certificates issued to the plaintiff by the Interstate Commerce Commission. By virtue of those certificates of public convenience and necessity issued by the Interstate Commerce Commission, the plaintiff is authorized by that Commission to engage in transportation in interstate commerce as a common carrier by motor carrier as follows:

"From Chicago, Illinois, to Clinton, Iowa; from junction United States Highway 30 and Illinois Highway 80 over Illinois Highway 30 to Moline, Illinois, and thence across the Mississippi River to Davenport, Iowa; from Bettendorf, Iowa, to Alton, Illinois, and thence to St. Louis, Missouri; from Galesburfi , now is the souri; from Galesburg, Illinois, to Keokuk, Iowa; from Sheffield, Illinois, to Burlington, Iowa; from junction of Illinois Highways 9 and 41 to Keokuk, Iowa; between Burlington, Iowa, and Keokuk, Iowa, on United States Highway 61 on the Iowa side of the Mississippi River; from Burlington to the shell loading plant at West Burlington, Iowa. The route between Keokuk and Burlington is alternate to one authorized on the Illinois side of the river."

All of those certificates are in full force and effect. The failure of the plaintiff to maintain reasonably continuous service between the points referred to would be ground for the Interstate Commerce Commission to revoke the plaintiff's certificates of public convenience and necessity covering its operations between those points.

The plaintiff applied to and secured from the Iowa Commerce Commission certificates under Rule MT–46 covering its operations between Burlington and the shell loading plant at West Burlington, Iowa, and between Keokuk and Burlington on the Iowa side. The plaintiff has not applied for or secured any other certificates under MT–46 and has not applied for or received any certificates of public convenience and necessity from the Iowa Commerce Commission. Originally the plaintiff's trucks traveled on the Illinois side of the river in going between Burlington and Keokuk on a route authorized by the Interstate Commerce Commission. About four years ago the condition of a bridge on that route became such that the plaintiff's trucks could not make use of the bridge. Thereupon the plaintiff secured a certificate of public convenience and necessity from the Interstate Commerce Commission under which it was authorized to operate its trucks into Keokuk either on Highway 9 via Fort Madison or via Highway 61 between Keokuk and Burlington as an alternate route. The route on the Illinois side is still an authorized route. The route on the Iowa side is described as a "route for operating convenience."

6. The plaintiff leases and maintains terminals at Burlington, Clinton, and Keokuk. It does not maintain terminals at either Bettendorf or Davenport. Across the river from Davenport and Bettendorf at Rock Island, Illinois, the plaintiff owns and maintains a terminal recently completed at the cost of $300,-000. The plaintiff has seven employees at its Burlington terminal; the same number at its Clinton terminal; ten employees at its Keokuk terminal; and seventy-five employees at its Rock Island terminal. As heretofore noted, the main office of the plaintiff is at Rock Island, Illinois. Its terminal at Rock Island serves the State of Illinois and the Cities of Davenport and Bettendorf. Shipments in and out of Davenport and Bettendorf from and to Clinton, Burlington, and Keokuk are handled through the Rock Island terminal at which terminal such shipments are loaded into or unloaded from the plaintiff's over-the-road trucks. The plaintiff picks up and delivers less than truckload shipments originating in or destined to Davenport and Bettendorf by means of smaller motor vehicles operated out of its Rock Island terminal. Galesburg, Illinois, is a breakup and distributing point for the plaintiff. Where shipments from

the other Iowa border cities in question to Burlington and Keokuk are not sufficient to make a truckload, such shipments are unloaded at Galesburg and consolidated into truckload lots with shipments from points in other states destined to Burlington and Keokuk and then transported by the plaintiff's over-the-road trucks to those cities. The plaintiff operates from four to six over-the-road trucks a day in and out of the City of Clinton, ten to twelve a day in and out of Bettendorf and Davenport, and eight to ten a day in and out of the Cities of Burlington and Keokuk. The plaintiff operates pickup trucks for pickup and delivery service in the Cities of Clinton, Burlington, and Keokuk. Those pickup trucks are regarded by the plaintiff as being "domiciled" in Iowa, and Iowa registration or license fees are paid on them. The plaintiff's trucks operating in and out of the Iowa border cities referred to not only transport shipments destined to and originating in the Iowa cities referred to but also transport shipments originating at points in other states and destined to points in other states. The plaintiff's operations between and in and out of the Iowa border cities referred to are integrated into its general operations as an interstate motor carrier. The plaintiff has no authority to and does not accept shipments from Davenport to Bettendorf nor from Bettendorf to Davenport. It has no authority to and does not accept shipments for points between Burlington and Keokuk on the Iowa side of the river. The freight charges on the shipments between the Iowa cities referred to are those set forth in the tariffs filed by the plaintiff with the Interstate Commerce Commission. Its terminals at Clinton, Burlington, and Keokuk are located within a proximity of one to two miles from bridges across the Mississippi River.

The plaintiff operates on an extensive scale as a common carrier by motor vehicle in the States of Illinois, Missouri, and Indiana under certificates of public convenience and necessity issued by the Interstate Commerce Commission. It operates between 400 and 500 motor vehicles. Its gross operating revenue in 1952 was approximately $4,600,000. Its gross revenue in 1952 from the shipments between the points in Iowa referred to was approximately $36,000. The Iowa border cities referred to are the western termini of its operations.

The plaintiff has not paid any Iowa motor vehicle registration fees upon any of the motor vehicles used by it in connection with the transportation of shipments originating in or destined to the Iowa cities referred to. However, as heretofore noted, the plaintiff has paid such fees on the pickup trucks operated by it in the cities of Burlington, Clinton, and Keokuk. The plaintiff has not applied for nor obtained any certificates of public convenience and necessity from the Iowa Commerce Commission.

7. Prior to 1953 Section 325.6, Code of Iowa 1950, I.C.A., provided that it was unlawful for any motor carrier "to operate or furnish public service within this state" without obtaining a certificate of public convenience and necessity from the Iowa State Commerce Commission. The 55th General Assembly of Iowa, which met in 1953, amended that Section by enacting Chapter 148 of the Acts of that Assembly. Section 325.6 in its present form reads as follows:

"It is hereby declared unlawful for any motor carrier to transport over a regular route or between fixed termini any person or property, for compensation, from any point or place in the state of Iowa to another point or place in said state irrespective of the route, highway or highways traversed, including the crossing of any state line of the state of Iowa, or the ticket or bill of lading issued and used for such transportation, without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation."

Prior to 1953 Section 321.54, Code of Iowa 1950, I.C.A., provided as follows:

"321.54 *Registration required of certain nonresident carriers.* Non-resident owners of foreign vehicles operated within this state for the intrastate transportation of persons or property for compensation or for the intrastate transportation of merchandise, shall register each such vehicle and pay the same fees therefor as is required with reference to like vehicles owned by residents of this state."

The 55th General Assembly amended that Section by enacting Chapter 129 of the Acts of that Assembly. That Section in its present form reads as follows:

"Non-resident owners of foreign vehicles operated within this state for the intrastate transportation of persons or property for compensation or for the intrastate transportation of merchandise, shall register each such vehicle and pay the same fees therefor as is required with reference to like vehicles owned by residents of this state.

"The term intrastate transportation as used herein shall mean the transportation for compensation of persons or property originating at any point or place in the state of Iowa and destined to any other point or place in said state irrespective of the route or highway or highways traversed, including the crossing of any state line of the state of Iowa, or the ticket or bill of lading issued and used for such transportation."

Those Sections in their amended form became effective July 4th, 1953.

8. The bill amending Section 325.6 was approved by the Governor of Iowa on April 15th, 1953. Around the middle of June, 1953, Ralph Wolf, the Chief Inspector for the Iowa Commerce Commission, called at the main office of the plaintiff at Rock Island, Illinois. He there met M. J. Riley, Vice President and Traffic Manager of the plaintiff. Mr. Wolf asked for and was given permission to inspect the plaintiff's records as to shipments between Iowa points. While there Mr. Wolf and Mr. Riley discussed the amendment to Section 325.6 shortly to become effective. Mr. Wolf informed Mr. Riley that after July 4th, 1953, the plaintiff would not be able to operate its trucks in Iowa without a certificate of public convenience and necessity from the Iowa Commerce Commission. Mr. Riley thereupon called Mr. George Mc-Caughan, Secretary of the Iowa Commerce Commission, by telephone. Mr. McCaughan informed him that under the amendment to Section 325.6, which would become effective July 4th, 1953, the plaintiff would have to secure a certificate of public convenience and necessity from the Iowa Commerce Commission in order to continue its operations in Iowa and that the statute would be enforced.

On June 29th, 1953, the plaintiff filed this action. It asked for judgment declaring that Sections 321.54 and 325.6 referred to were unconstitutional and for a preliminary and permanent injunction restraining the defendants from enforcing the said Sections as against the plaintiff. On July 2d, 1953, Judge Archibald K. Gardner entered an order providing for this three-judge court. On July 8th, 1953, the plaintiff's application for a preliminary injunction was heard by District Judge William F. RILEY. The defendants appeared by counsel and resisted the application. On July 16th, 1953, District Judge William F. RILEY entered an order restraining the defendants from enforcing the provisions of said Sections against the plaintiff pending hearing by the three-judge court.

9. On July 8th, 1953, the defendants Leo Hoegh, Attorney General of Iowa, and Pearl McMurray, Commissioner of Public Safety, filed a motion to dismiss the plaintiff's complaint. The grounds of that motion are as follows:

"1. These defendants have no powers or duties in connection with the subject matter of the Petition of plaintiff, with the exception that they are charged with the enforcement of the statutes of the State of Iowa relating to the registration of vehicles.

"2. That the operation of vehicles upon the highways of the State of Iowa is a privilege and not a right.

"3. It is within the police power of the State to require the registration of vehicles which are operated upon its highways and the exaction of fees for such operation and does not constitute a direct and material burden on interstate commerce.

"4. The State having the right to require the registration of non-resident owned vehicles operated on its highways in interstate commerce and to exact the same fees therefor as are charged for the registration of similar resident owned vehicles, there can be no complaint as to the definition of 'intra-state transportation' by the legislature.

"5. Definitions of 'interstate commerce' which are pronounced by the Interstate Commerce Commission have no relation to the powers of the State to define 'intra-state operation' for the purpose of vehicle registration and cannot impair such powers.

"6. That the question, whether the definition of 'intra-state transportation' contained in section 321.-54, Code of Iowa, 1950, applies to the operations of plaintiff, is not appropriate in this action.

"7. That there is no showing in plaintiff's petition of unconstitutionality of section 321.54 relating to the registration of vehicles operating on the highways of the State of Iowa.

"8. That there is no showing in plaintiff's petition of a cognizable basis in equity to sustain plaintiff's petition as it relates to the registration of non-resident owned vehicles."

No ruling has been made on that motion and consequently no answer has been filed by those defendants. The motion was submitted to this three-judge court and considered by this court as presenting the matters in issue between the plaintiff and those defendants. Their motion relates to the matter of the payment of registration or license fees under Section 321.54 as amended. The issues between the plaintiff and those defendants relate only to that Section and not to Section 325.6 relating to certificates of public convenience and necessity. It is the claim of those defendants that they are only concerned with the matter of registration fees and that the issues between them and the plaintiff are separate and distinct from the issues between the plaintiff and the other defendants, and their objectives and interests are different from the other defendants. See Transcript of Hearing on Application for Preliminary Injunction, pages 8, 9, 41.

10. On July 13th, 1953, the defendants Carl W. Reed, David Long, and John M. Ropes, members of the Iowa Commerce Commission, filed their answer herein. Their answer and the issues between the plaintiff and those defendants relate only to Section 325.6 pertaining to certificates of public convenience and necessity and not as to Section 321.54 relating to the matter of the payment of registration or license fees. In their answer those defendants set up a number of matters by way of defense. On page 2 of their answer they assert that Section 325.6, as amended, is a valid law and that they will enforce its provisions. On page 4 of their answer they make a similar assertion. On page 6 of their answer they assert "there are regular established motor carriers, of general commodities, by motor vehicles, operating between said points solely within the State of Iowa and over Iowa highways, which facilities are entirely adequate to serve the commerce requirements of said Iowa communities  *  *." On page 6 of their answer those defendants assert that Section 325.6, as amended, is equally applicable to the operations of the plaintiff as it is to local carriers. In the transcript of the testimony of the hearing before the three-judge court (pp. 5, 7) counsel for those

defendants, in response to inquiry made by a member of the three-judge court, stated that it was the duty of those defendants to enforce the provisions of Section 325.6 as amended and that they will enforce the same. During oral arguments in connection with the submission of the case to the three-judge court counsel for the defendants made reference to the matter of the plaintiff not having certificates under the Iowa Commerce Commission Rule MT–46 referred to. In a written brief filed in behalf of those defendants, reference is also made to the same matter. Neither the plaintiff nor those defendants in their pleadings refer to the matter of certificates under Rule MT–46 and no issue is raised as to such certificates.

In their answer the members of the Iowa Commerce Commission formally plead, and their counsel by statements of record state, that they will enforce the provisions of Section 325.6 against the plaintiff. This court has no reason for disbelieving their formal statements as to what they intend to do in that regard. Enforcement of the provisions of Section 325.6, as amended, against the plaintiff would entail preventing the plaintiff from operating its trucks on Iowa highways under the certificates of public convenience and necessity granted to it by the Interstate Commerce Commission unless and until it secured a certificate of public convenience and necessity from the Iowa Commerce Commission.

11. The situation as to the matter of the enforcement of Section 321.54, as amended, relating to registration or license fees is lacking in clarity and definiteness. The defendants Leo Hoegh, Attorney General, and Pearl McMurray, Commissioner of Public Safety, have not notified the plaintiff that they expect to compel it to pay registration or license fees upon its trucks operated on the Iowa highways. In the only pleading filed by them the only statement made by them in regard to the matter of enforcement is the general statement "that they are charged with the enforcement of the statutes of the State of Iowa relating to the registration of vehicles." The situation is not clarified by references in the testimony as to reciprocity between the States of Illinois and Iowa in the matter of registration fees and compensation tax in connection with motor vehicles owned by residents of the respective states. Chapter 326, Code of Iowa 1950, I.C.A. provides for a compensation tax to be paid by motor carriers for the use of the Iowa highways. That tax is in addition to the regular registration fees. The plaintiff pays the registration fees and other fees provided for by the State of Illinois upon its over-the-road trucks and upon its pickup trucks used in connection with its Rock Island terminal. Ever since 1913 the Iowa officials or agencies having to do with the registration of motor vehicles have had authority to enter into agreements with other states in regard to the matter of reciprocal exemptions and privileges in regard to motor vehicles owned by residents of the respective states. See Opinions, Attorney General of Iowa 1940, p. 432, and Merchants Motor Freight v. State Highway Commission, 1948, 239 Iowa 888, 32 N.W.2d 773. At the present time, and for some time, such authority has been vested in the Iowa Commerce Commission.

12. The members of the Iowa Commerce Commission, unless restrained by this court, will stop the plaintiff from operating its trucks in Iowa because it does not have a certificate of public convenience and necessity from that commission.

13. Stopping the plaintiff from operating its trucks in Iowa would cause irreparable damage to it.

14. It is unclear and uncertain what the defendants Leo Hoegh, Attorney General of Iowa, and Pearl McMurray, Commissioner of Public Safety, will or will not do in the matter of registration fees in connection with plaintiff's trucks operated in Iowa. There is no factual basis for a determination by this court as to whether any such fees, if sought to be collected, would or would not be within

the taxing power of the State of Iowa in regard thereto.

15. The question as to whether the plaintiff should or should not secure an additional certificate or certificates under Iowa Commerce Commission Rule MT–46 is not raised by the pleadings and that matter is not in issue in this case.

### Memorandum

The plaintiff's claim as to federal court jurisdiction in this case is based upon Sections 1331, 1337, 2201, 2281 and 2284 of Title 28, U.S.C.A.

In Section 303(a)(10) of Title 49 U.S.C.A., Congress defined the term "interstate commerce" as used in the Motor Carrier Act of 1935. That definition is as follows:

"The term 'interstate commerce' means commerce between any place in a State and any place in another State or between places in the same State through another State, * *."

The provisions of Section 325.6, as amended, run counter to that definition in that under the provisions of that Section commerce between points in Iowa which crosses through another state is defined as intrastate commerce. Based on the definition contained in Section 325.6, the members of the Iowa Commerce Commission assert the right to compel the plaintiff to secure a certificate of convenience and necessity from it in order to operate as a motor carrier between the Iowa points in question and this even though the Interstate Commerce Commission determined that the plaintiff's operations were bona fide and has granted the plaintiff certificates of public convenience and necessity to operate as a motor carrier in interstate commerce between those points. The status of Section 325.6, as amended, so far as the plaintiff is concerned, is well described by the United States Supreme Court in the case of Buck v. Kuykendall, 1925, 267 U.S. 307, at page 316, 45 S.Ct. 324, at page 326, 69 L.Ed. 623, 38 A.L.R. 286, where that court states:

"* * * The vice of the legislation is dramatically exposed by the fact that the State of Oregon had issued its certificate which may be deemed equivalent to a legislative declaration that, despite existing facilities, public convenience and necessity required the establishment by Buck of the auto stage line between Seattle and Portland. Thus, the provision of the Washington statute is a regulation, not of the use of its own highways, but of interstate commerce. Its effect upon such commerce is not merely to burden, but to obstruct, it. Such state action is forbidden by the commerce clause. * * *"

In the case of State ex rel. Board of Railroad Commissioners v. Martin, 1930, 210 Iowa 207, 230 N.W. 540, the defendant was engaged in the transportation of passengers to and from Omaha, Nebraska, Davenport, Iowa, Clinton, Iowa, and Chicago, Illinois. The Iowa Board of Railroad Commissioners (now Iowa Commerce Commission) sought to stop the defendant from so operating without securing a permit of public convenience and necessity under what is now Section 325.6. That was prior to the recent amendment to that statute. The Iowa Supreme Court held that the defendant could not be required to secure such certificate. That court stated, 230 N.W. page 544:

"* * * Because of the commerce clause the State may not condition the right to engage in interstate commerce upon its determination as to whether or not public convenience and necessity would be promoted or retarded thereby. * * *"

In the case of Central Greyhound Lines, Inc. of New York v. Mealey, 1948, 334 U.S. 653, at pages 655, 656, 68 S.Ct. 1260, at page 1262, 92 L.Ed. 1633, the United States Supreme Court states:

"It is too late in the day to deny that transportation which leaves a State and enters another State is

'Commerce * * * among the several states' simply because the points from and to are in the same State. * * *"

A matter that has to be considered is whether the situation in the present case is sufficiently analogous or similar to the situations in the cases of Public Service Commission of Utah v. Wycoff Co., Inc., 1952, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291, hereafter referred to as the Utah case, and Lloyd A. Fry Roofing Co. v. Wood, 1952, 344 U.S. 157, 73 S.Ct. 204, 97 L.Ed. 168, hereafter referred to as the Fry case, so as to require a similar disposition.

In the Utah case the Wycoff Company instituted an action in the Federal District Court of Utah seeking two kinds of specific relief: (1) a declaratory judgment that its carriage of motion picture film and newsreels between points in Idaho constituted interstate commerce, and, (2) an injunction against the Public Service Commission of Utah interfering with such transportation over routes authorized by the Interstate Commerce Commission. The Wycoff Company offered no evidence of any past, pending, or threatened action touching its business in any respect. The District Court found that no such interference had been made or threatened and dismissed the complaint. The United States Court of Appeals for the Tenth Circuit reversed. 195 F.2d 252. The United States Supreme Court granted certiorari, 343 U.S. 975, 72 S.Ct. 1074, 96 L.Ed. 1368, and reversed the Circuit Court of Appeals and held that the action could not be maintained either as one for an injunction or for a declaratory judgment. 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291. The United States Supreme Court stated, 344 U.S. at pages 240, 241, 73 S.Ct. at page 239, that the action was "wanting in equity because there is no proof of any threatened or probable act of the defendants which might cause the irreparable injury essential to equitable relief by injunction." That court further stated, 344 U.S. at page 245, 73 S.Ct. at page 241, that the "dispute has not matured

to a point where we can see what, if any, concrete controversy will develop." That court further stated, 344 U.S. at page 248, 73 S.Ct. at page 242: "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." The situation in the present case is different from that in the Utah case. In that case, as just noted, there was no evidence of any threatened action on the part of the Public Service Commission in regard to the operations of the plaintiff. In the present case shortly before the amendment to Section 325.6 became effective an inspection was made of the plaintiff's records by the Chief Inspector for the Iowa Commerce Commission relating to the operations here in controversy. The plaintiff was informed by the Chief Inspector and the Secretary of the Iowa Commerce Commission that it would not be able to use the Iowa highways after July 4th, 1953, without a certificate of public convenience and necessity from that commission. That the plaintiff was rightfully informed by those officials as to the intention of the Iowa Commerce Commission is confirmed by the formal allegations and statements of that commission in this case that it does intend to require the plaintiff to secure a certificate of convenience and necessity from it as a condition to the use of the Iowa highways.

In the Fry case, supra, there was involved Section 11 of the Arkansas Motor Act which required contract motor carriers to obtain a permit from the Public Service Commission of Arkansas. The plaintiff was a contract motor carrier engaged in interstate commerce. It did not have the permit provided for in said Section 11. The commission caused several of the plaintiff's drivers to be arrested because of the plaintiff's noncompliance with that Section. The plaintiff brought an action seeking to

enjoin the commission from further molestation or prosecution of its drivers. Neither the plaintiff nor any of its drivers had any authority from the Interstate Commerce Commission. The Public Service Commission of Arkansas expressly disclaimed any "discretionary right to refuse to grant a permit for contract carriage where that carriage is in interstate commerce." The United States Supreme Court stated, 344 U.S. at page 161, 73 S.Ct. at page 206:

"* * * The state asserts no power or purpose to require the drivers to do more than register with the appropriate agency. * * Nor is there any showing whatever that the Commission has attempted or will attempt to attach any burdensome conditions to the grant of a permit, or conditions that would in any manner conflict with the National Motor Carrier Act or any Interstate Commerce Commission regulations issued thereunder. * *"

The United States Supreme Court upheld the dismissal of the case.

The difference between the situation in the Fry case and the present case is manifest. In the Fry case what was involved was a non-discretionary permit which merely served to identify the driver. In the present case there is involved a certificate of public convenience and necessity which is discretionary with the Iowa Commerce Commission and without which the plaintiff could not operate its trucks at all on the Iowa highways. In the present case if there was involved the matter of the non-discretionary certificate referred to in Rule MT–46 of the Iowa Commerce Commission, it might have features somewhat analogous to those in the Fry case. As noted in the Findings, no issue was raised by the plaintiff as to the matter of a certificate or certificates under Rule MT–46 and the plaintiff disclaims any attack upon that Rule in this action.

In the present case the threatened action of the Iowa Commerce Commission would disregard the certificates of public convenience and necessity granted to the plaintiff by the Interstate Commerce Commission; it would ignore an adjudication of the Interstate Commerce Commission and it would invade the authority given by Congress to that Commission under the commerce clause.

It is clear that under the situation shown in this case the Iowa Commerce Commission may not properly and legally enforce the provisions of Section 325.6 as against the plaintiff; the commerce clause is an impediment to it so doing. It is clear that attempts on the part of the commission to so do would cause irreparable injury to the plaintiff. However, such a holding under the facts in this case does not necessarily require a holding that the statute is unconstitutional. The plaintiff in this action is a champion of no one's rights except its own. In the case of Spector Motor Service, Inc., v. McLaughlin, 1944, 323 U.S. 101, at page 105, 65 S.Ct. 152, at page 154, 89 L.Ed. 101, the United States Supreme Court stated in regard to the matter of questions involving the constitutionality of state statutes:

"If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality * * * unless such adjudication is unavoidable. * * *"

In the case of State ex rel. Board of Railroad Commissioners v. Martin, supra, the Iowa Supreme Court stated, 230 N.W. at pages 543, 544:

"* * * It is not to be presumed that the Legislature intended to invade the field in which the federal government has exclusive jurisdiction, * * *."

In the same case the same Court stated, 230 N.W. at page 543:

"* * * The commerce clause may operate to limit the applicability of some of the * * * provisions of the statute. * * *"

In situations such as those disclosed in the case of Eichholz v. Public Service Commission of Missouri, 1939, 306 U.S.

268, 59 S.Ct. 532, 83 L.Ed. 641, the commerce clause would not be an impediment to the enforcement of the provisions of Section 325.6 as amended or to its applicability.

It is not deemed necessary in the present case to make a declaration as to the constitutionality of Section 325.6 as amended. The plaintiff will be afforded adequate relief by treating the provisions of that Section as not applicable to the plaintiff and enjoining the members of the Iowa Commerce Commission accordingly.

Throughout the case the attorneys for the defendants Leo Hoegh, Attorney General of Iowa, and Pearl McMurray, Commissioner of Public Safety, have repeatedly stated that the issues between them and the plaintiff relate only to Section 321.54 as amended relating to registration fees and not to Section 325.6 relating to certificates of public convenience and necessity and that those issues are separate and distinct from the issues between the plaintiffs and the other defendants.

It does not appear what action, if any, the defendants Leo Hoegh, Attorney General of Iowa, and Pearl McMurray, Commissioner of Public Safety of Iowa, may take in regard to the matter of registration fees. There is no threatened action on their part.

Section 302(b), Title 49, U.S.C. A., of the Motor Carrier Act of 1935 provides that "Nothing in this chapter shall be construed to affect the powers of taxation of the several States * *." It is well settled that a state may condition the use of its highways by motor vehicles whether moving in interstate commerce or not upon the payment of a fee either to compensate the state for the costs incident to policing them, American Motor Coach System v. City of Philadelphia, 3 Cir., 1928, 28 F.2d 736, or to contribute to the cost of maintaining the highways. Interstate Busses Corp. v. Blodgett, 1928, 276 U.S. 245, 48 S.Ct. 230, 72 L.Ed. 551; Hendrick v. State of Maryland, 1915, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385. Since such charges are compensatory in nature, the amount of the same must bear some reasonable relation to the cost of maintaining the highways and policing. Sprout v. City of South Bend, 1928, 277 U.S. 163, 48 S.Ct. 502, 72 L.Ed. 833; Interstate Transit v. Lindsey, 1921, 283 U. S. 183, 51 S.Ct. 380, 75 L.Ed. 953. Charges not having such relation constitute an unreasonable burden on interstate commerce. Ingels v. Morf, 1937, 300 U.S. 290, 57 S.Ct. 439, 81 L.Ed. 653. In the recent case of People v. Learnard, 305 N.Y. 495, 114 N.E.2d 9, the New York Court of Appeals upheld the imposition of New York regulation fees imposed upon a non-resident motor carrier engaged in interstate commerce who transported goods for hire between points in that state. In that case the court stated, 114 N.E.2d page 11:

"* * * But the States, under the police power, may, without violating the commerce clause, regulate the use of their own highways and exact compensation for their use, and, for that purpose, may impose moderate, reasonable, uniform, non-discriminatory registration regulations and fees, even on vehicles engaged directly in interstate commerce, at least so long as the State regulations do not contravene congressional enactments on the same subject. * * *"

In the case of State v. Western Transportation Co., 1950, 241 Iowa 896, 43 N. W.2d 739, a truck driver employed by the defendant drove one of its trucks which was registered in the State of Illinois to the DuPont plant within the industrial limits of Clinton, Iowa, and transported merchandise to the defendant's dock in Clinton and from there to the consignee thereof in Chicago, Illinois. The defendant had not paid Iowa registration fees on the truck. A criminal charge was filed against the driver of the truck. He was charged with the violation of the provisions of Section 321.-54. That was prior to the recent amendment to that Section. The driver was

convicted in the lower court. On appeal the Iowa Supreme Court reversed. That court held that the transportation involved was but part of the interstate movement of the merchandise involved and that the transportation of that merchandise from the plant to the dock did not constitute intrastate transportation.

In the present case in addition to no action being presently threatened in regard to the matter of registration fees there is no factual basis for this court to determine whether, if imposed, they would constitute unreasonable charges. There is the further possibility that reciprocity between the States of Illinois and Iowa might be involved. There is no concrete controversy as yet between the plaintiff and the defendants Leo Hoegh, Attorney General of Iowa, and Pearl McMurray, Commissioner of Public Safety of Iowa, as to the matter of registration fees. A concrete controversy not being present, a declaration would be inappropriate.

Conclusions of Law

1. That this court has jurisdiction of the subject matter of this action and the parties thereto.

2. That no declaration should be made as to the constitutionality of Section 325.6, Code of Iowa 1950, as amended, I.C.A.

3. That no declaration should be made as to the constitutionality of Section 321.54, Code of Iowa 1950, as amended, I.C.A.

4. That the plaintiff is not entitled to any injunctive relief as against the defendants Leo Hoegh, Attorney General of Iowa, and Pearl McMurray, Commissioner of Public Safety, and that the preliminary injunction hereto issued against them should be dissolved.

5. That the plaintiff is entitled to injunctive relief as against the defendants Carl W. Reed, David Long, and John M. Ropes, members of the Iowa Commerce Commission, in the matter of Section 325.6, Code of Iowa 1950, as amended, I.C.A.